**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): _____     _____Caption [use short title]_____

Motion for: Petition for Permission to Appeal

Pursuant to Fed. R. Civ. P. 23(f)

Boston Retirement System
v.
Alexion Pharmaceuticals, Inc., et al.

_____

Set forth below precise, complete statement of relief sought:

Petition for permission to appeal order dated April 13, 2023

granting class certification pursuant to Fed. R. Civ. P. 23(f)

MOVING PARTY: Alexion Pharmaceuticals, Inc. et al.     OPPOSING PARTY: Erste Asset Management GmbH, et al.

☐ Plaintiff     ☑ Defendant

☐ Appellant/Petitioner     ☐ Appellee/Respondent

MOVING ATTORNEY: Kannon K. Shanmugam     OPPOSING ATTORNEY: Gregg Levin

[name of attorney, with firm, address, phone number and e-mail]

Paul, Weiss, Rifkind, Wharton & Garrison LLP     Motley Rice LLC

2001 K Street, NW, Washington, DC 20006-1047     28 Bridgeside Blvd., Mt. Pleasant, SC 29464

202 223 7325, kshanmugam@paulweiss.com     843 216 9512, glevin@motleyrice.com

Court- Judge/ Agency appealed from: The Honorable Alvin W. Thompson, U.S. District Court for the District of Connecticut

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____
_____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency:  _____
_____
_____
_____
_____

Is oral argument on motion requested?  ☑ Yes  ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No If yes, enter date:_____

Signature of Moving Attorney:

/s/ Kannon K. Shanmugam  Date: April 27, 2023     Service by: ☐ CM/ECF  ☑ Other [Attach proof of service]

Form T-1080 (rev.12-13)

No.

# In the United States Court of Appeals for the Second Circuit

BOSTON RETIREMENT SYSTEM,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED, PLAINTIFF-RESPONDENT

*v.*

ALEXION PHARMACEUTICALS, INC.; LEONARD BELL;
DAVID L. HALLAL; AND VIKAS SINHA,
DEFENDANTS-PETITIONERS

*ON PETITION FOR PERMISSION TO APPEAL
FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT
(CIV. NO. 16-2127)
(THE HONORABLE ALVIN W. THOMPSON, J.)*

## PETITION FOR PERMISSION TO APPEAL
## FROM ORDER GRANTING CLASS CERTIFICATION
## PURSUANT TO FED. R. CIV. P. 23(f)

DANIEL J. KRAMER
AUDRA SOLOWAY
GREGORY LAUFER
JONATHAN HURWITZ
TAMAR HOLOSHITZ
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019*

KANNON K. SHANMUGAM
JANE O'BRIEN
E. GARRETT WEST
ANDREW J. TOPAL
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*

## CORPORATE DISCLOSURE STATEMENT

Petitioners are Alexion Pharmaceuticals, Inc.; Leonard Bell; David L. Hallal; and Vikas Sinha. Petitioner Alexion Pharmaceuticals, Inc., is a wholly owned subsidiary of AstraZeneca PLC. AstraZeneca PLC does not have a parent corporation, and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

Introduction ........................................................................1

Questions presented .........................................................3

Statement of the case .......................................................3

Reasons for granting the petition ...................................7

    A.    Class certification should be denied with respect to any corrective disclosures that did not affect the stock's price ...........7

    B.    The absence of statistically significant price movements following corrective disclosures shows a lack of price impact ........................................................12

    C.    Review under Rule 23(f) is warranted ...........................................16

Conclusion ........................................................................22

# TABLE OF AUTHORITIES

## CASES

*Allegheny County Employees' Retirement System* v. *Energy Transfer LP*, Civ. No. 20-200, 2022 WL 3597200 (E.D. Pa. Aug. 23, 2022) ...........................................18

*Amgen Inc.* v. *Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) ..................................................10

*Arkansas Teacher Retirement System* v. *Goldman Sachs Group, Inc.*, 955 F.3d 254 (2d Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 1951 (2021) ...............................17, 21

*Arkansas Teacher Retirement System* v. *Goldman Sachs Group, Inc.*, 879 F.3d 474 (2d Cir. 2018) ...................................15, 17

*Arkansas Teacher Retirement System* v. *Goldman Sachs Group, Inc.*, No. 22-484 (2d Cir. argued Sept. 21, 2022) ........................17, 21

*Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988) ...............................*passim*

ii

Page

Cases—continued:

*Carpenters Pension Trust Fund of St. Louis* v. *Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015)................................................................19

*CenturyLink Sales Practices and Securities Litigation, In re*,
  337 F.R.D. 193 (D. Minn. 2020)............................................................18

*Comcast Corp.* v. *Behrend*, 569 U.S. 27 (2013) ..................................9, 12

*Coopers & Lybrand* v. *Livesay*, 437 U.S. 463 (1978) ...................17, 21

*Di Donato* v. *Insys Therapeutics, Inc.*,
  333 F.R.D. 427 (D. Ariz. 2019)..............................................................19

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
  309 F.R.D. 251 (N.D. Tex. 2015) ..........................................................18

*Finisar Corp., In re*, Civ. No. 11-1252,
  2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ......................................19

*Goldman Sachs Group, Inc.* v. *Arkansas Teacher Retirement
  System*, 141 S. Ct. 1951 (2021)..................................................*passim*

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)......................................................................*passim*

*Hevesi* v. *Citigroup Inc.*, 366 F.3d 70 (2004) ...............................17, 21

*Intuitive Surgical Securities Litigation, In re*, Civ. No. 13-1920,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ....................................18

*Johnson* v. *Nextel Communications Inc.*,
  780 F.3d 128 (2d Cir. 2015) ..................................................................10

*Li* v. *Aeterna Zentaris, Inc.*, 324 F.R.D. 331 (D.N.J. 2018) ...........19

*Meyer* v. *Greene*, 710 F.3d 1189 (11th Cir. 2013) ...........................11

*Monroe County Employees' Retirement System* v. *Southern Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019)....................................................7, 10, 18

Page

Cases—continued:

*Petrobras Securities, In re*, 862 F.3d 250 (2d Cir. 2017) ..................................17

*Pfizer, Inc.*, *In re*, 819 F.3d 642 (2d Cir. 2016) .....................................14

*Pharmaceutical Industry Average Wholesale Price Litigation*,
    *In re*, 588 F.3d 24 (1st Cir. 2009).........................................9

*Salomon Analyst Metromedia Litigation, In re*,
    544 F.3d 474 (2d Cir. 2008) ........................................17, 22

*Simpson* v. *Dart*, 23 F.4th 706 (7th Cir. 2022).........................................9

*St. Clair County Employees' Retirement System* v. *Acadia*
    *Healthcare Co.*, Civ. No. 18-988,
    2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022)...............................18

*Sumitomo Copper Litigation, In re*, 262 F.3d 134 (2d Cir. 2001)..............16, 21

*Teamsters Local 445 Freight Division Pension Fund* v.
    *Bombardier Inc.*, 546 F.3d 196 (2d Cir. 2008) ................................17

*Trivity Health, Inc.*, *In re*, No. 22-502,
    2022 WL 17243323 (6th Cir. Nov. 21, 2022) ...................................22

*Vivendi, In re*, 838 F.3d 223 (2d Cir. 2016) ..........................................14

*Vivendi Universal, S.A.*, *In re*,
    634 F. Supp. 2d 352 (S.D.N.Y. 2009)..........................................14

*Vizirgianakis* v. *Aeterna Zentaris, Inc.*,
    775 Fed. Appx. 51 (3d Cir. 2019) ...........................................19

*Wachtel ex rel. Jesse* v. *Guardian Life Insurance Co.*,
    453 F.3d 179 (3d Cir. 2006) ................................................9

*Waggoner* v. *Barclays PLC*, 875 F.3d 79 (2d Cir. 2017)......................11, 12, 17

*Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011) ........................................10

iv

# RULES

                                                                Page

Fed. R. Civ. P. 23(b)(3).................................................................4

Fed. R. Civ. P. 23(c)(1)(B)............................................................9

Fed. R. Civ. P. 23(f) ..............................................................*passim*

## MISCELLANEOUS

David H. Kaye & David A. Freedman,
    *Reference Guide on Statistics* (3d ed. 2011)..................................15

S.P. Kothari & Jerold B. Warner,
    *Econometrics of Event Studies* (2007) ..........................................14

Defendants-petitioners respectfully petition under Federal Rule of Civil Procedure 23(f) for permission to appeal the district court's order certifying a class in this case.

## INTRODUCTION

In this securities-fraud class action, the district court certified a class action after concluding that lead plaintiffs had successfully invoked, and defendants had failed to rebut, the presumption of reliance on the market price of a stock articulated in *Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988). As has become increasingly common in such cases, plaintiffs' motion for class certification relied implicitly on an "inflation-maintenance" theory, in which a price drop following an alleged corrective disclosure is said to indicate that earlier misrepresentations maintained rather than created inflation in the stock's price. Although defendants here demonstrated that there was no statistically significant price drop for multiple alleged corrective disclosures, the district court concluded that they had failed to rebut that presumption by showing a lack of price impact—and thus granted the motion for class certification *in toto*. The district court committed two fundamental legal errors.

*First*, the district court expressly refused to consider whether class certification should be denied in part if some but not all of the alleged corrective disclosures did not affect the stock's price, on the ground that asking whether specific corrective disclosures affected the stock's price would duplicate the

loss-causation inquiry. But the Supreme Court has repeatedly instructed that courts must evaluate price impact even if it overlaps with merits questions, and a class-certification ruling must define the claims to be litigated on a class-wide basis. Accordingly, claims based on alleged corrective disclosures that have no price impact must be excluded from the class.

*Second*, the district court imposed an impossibly high burden on defendants seeking to defeat class certification by showing that the alleged misrepresentation or corrective disclosure had no impact on the stock's price. It concluded that a defendant fails to show a lack of price impact even where (1) there is no "front-end" evidence that a misrepresentation affected the stock's price and (2) any "back-end" price drop was not statistically significant. Instead, the court reasoned, the plaintiff need only show that the return on the stock is "abnormal," or that the stock underperformed the particular industry or the market as a whole, even if the abnormal return or underperformance is statistically indistinguishable from random fluctuations. That rule misapplies the defendant's burden of persuasion; reflects a fundamental misunderstanding of the relevant statistical principles; renders event studies, the well-recognized gold standard for measuring price impact, worthless for defendants; and makes it virtually impossible for a defendant to rebut the *Basic* presumption.

This Court should review the district court's erroneous decision under Rule 23(f) because the issues it presents are exceptionally important both to

the defendants in this case and to the continued application of the *Basic* presumption more generally. On the first issue, district courts in this circuit and beyond are in disarray; on the second, they are in widespread conflict with the Supreme Court's instruction that the *Basic* presumption should be rebuttable not just in theory but in fact. This Court should grant the petition.

## QUESTIONS PRESENTED

1.     Whether class certification should be denied with respect to any alleged misstatements for which alleged corrective disclosures did not affect the stock's price.

2.     Whether a defendant shows that it is more likely than not that a misrepresentation did not affect the stock's price when there is no "front end" evidence of price impact and no statistically significant price drop on the "back end."

## STATEMENT OF THE CASE

1.     Defendant-petitioner Alexion Pharmaceuticals, Inc., is a developer and manufacturer of pharmaceuticals, and its flagship product Soliris treats two extremely rare and life-threatening blood disorders. The operative complaint alleges that Alexion used illegal or unethical practices to increase revenue from sales of Soliris. *See* D. Ct. Dkt. 121, at 31-53 (¶¶ 102-167). Lead plaintiffs allege that Alexion and the other defendants-petitioners (Alexion directors and officers) violated the federal securities laws by making false or

misleading statements when (1) the company disclosed the company's "strategy for marketing" Solaris while "omitting crucial details about the illegal practices that were artificially propping up those sales" and (2) the company's officers "certified that they had designed and evaluated effective internal and disclosure controls over financial reporting" despite "rampant illegal practices." D. Ct. Dkt. 121, at 71 (¶¶ 232, 234).

Plaintiffs allege that the truth about defendants' sales practices was revealed to the market in a series of seven corrective disclosures on seven separate days between November 4, 2016 and May 24, 2017. *See* D. Ct. Dkt. 121, at 53-70 (¶¶ 168-230); D. Ct. Dkt. 248, at 7-11 (plaintiffs' reply brief in support of class certification); D. Ct. Dkt. 248-4, at 9-29 (plaintiffs' expert's rebuttal report). Plaintiffs allege that the disclosures resulted in declines in the market price of Alexion's stock that wiped out nearly "$10 billion in shareholder value." D. Ct. Dkt. 121, at 100 (¶ 339).

2. Plaintiffs moved to certify a class of purchasers of Alexion's stock from January 30, 2014, through May 26, 2017, two days after the last alleged corrective disclosure. In order to establish that common questions predominate under Rule 23(b)(3), plaintiffs relied on the presumption that the Supreme Court recognized in *Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988). The Court in *Basic* adopted a rebuttable presumption that the price of a stock in an efficient market will reflect the impact of alleged misrepresentations. *See*

*id.* at 246-247. As the Court has since made clear, however, defendants may rebut the *Basic* presumption by showing that the alleged misrepresentations "did not actually affect the stock's market price." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014) (*Halliburton II*).

Here, defendants sought to rebut the *Basic* presumption by showing that most of the corrective disclosures—four of seven—did not correspond to a statistically significant same-day change in the stock's price. *See* D. Ct. Dkt. 237, at 12-17; D. Ct. Dkt. 237-14, at 19-46 (¶¶ 29-77). Plaintiffs (and their expert) conceded that there was no statistically significant price impact on those four days, but they argued that class certification was still appropriate because, they contended, they had established a statistically significant price drop for "at least one corrective disclosure" and the absence of a statistically significant price drop "does not prove the absence of price impact." D. Ct. Dkt. 248, at 7-8.[1]

The district court agreed with both propositions urged by plaintiffs and certified a class. While acknowledging that defendants may rebut the *Basic*

---

[1] Plaintiffs also argued that, for some corrective disclosures, there were statistically significant price drops on trading days *after* the day of the disclosure. For example, plaintiffs argued that there was a statistically significant price drop on Friday, November 11, that they attributed to an alleged corrective disclosure on Wednesday, November 9. *See* D. Ct. Dkt. 248, at 8. The district court did not address that argument, but it is obviously inconsistent with the theory of market efficiency that underlies the *Basic* presumption, as well as plaintiffs' specific argument that the market for Alexion's stock is highly efficient. *See* D. Ct. Dkt. 198-3, at 12 (¶ 24).

presumption, the court reasoned that defendants had the "daunting task" of proving that "the alleged misstatements had *no* price impact whatsoever" for "all of the alleged corrective disclosures." D. Ct. Dkt. 267, at 37-38 (citations omitted). Because defendants conceded that there was statistically significant price movement "with respect to at least some of the alleged corrective disclosures," the court continued, defendants necessarily failed to prove the absence of price impact as to *all* of the corrective disclosures. *Id.* at 39-40. The court reasoned that asking whether certain corrective disclosures should be excluded from the class definition was "a loss causation analysis not appropriate at this stage." *Id.* at 40.

The court next concluded that defendants could not disprove price impact even for alleged misstatements lacking a statistically significant back-end price reaction because these disclosures were "accompanied by an abnormal return, even if the difference was not statistically significant." D. Ct. Dkt. 267, at 40. The court noted that, on each alleged corrective-disclosure date, Alexion's stock underperformed either the market or the industry. *Id.* at 41. It reasoned that the "lack of statistical significance does not prove an absence of price impact," because the absence of statistical significance is not evidence of absence of "impact on the stock price." *Id.* (citation omitted). The court thus certified the entire proposed class. *Id.* at 48.

## REASONS FOR GRANTING THE PETITION

The petition should be granted because the district court erred by (1) refusing even to consider whether defendants rebutted the *Basic* presumption in part by showing that some if not all of the corrective disclosures had no price impact and (2) concluding that defendants failed to rebut the *Basic* presumption when there was no "front-end" evidence of price impact and no statistically significant price movement on the "back end." This Court should grant the petition to resolve those issues and ensure that defendants have a realistic prospect of rebutting the *Basic* presumption—as the Supreme Court has reiterated they must.

### A. Class Certification Should Be Denied With Respect To Any Corrective Disclosures That Did Not Affect The Stock's Price

The district court first concluded that a defendant necessarily fails to rebut the *Basic* presumption for all corrective disclosures (and thus all corresponding misstatements) if the defendant fails to show that even one corrective disclosure had no price impact. *See* D. Ct. Dkt. 267, at 40 (citing *Monroe County Employees' Retirement System* v. *Southern Co.*, 332 F.R.D. 370 (N.D. Ga. 2019)). That was erroneous.

1. a. The Supreme Court has repeatedly reiterated that a defendant in a securities class action is entitled to rebut the *Basic* presumption of classwide reliance by "[a]ny showing that severs the link between the alleged misrepresentation" and the "price received (or paid) by the plaintiff."

7

*Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014) (*Halliburton II*). As the Supreme Court recently put it, "[i]f a misrepresentation had no price impact, then *Basic*'s fundamental premise completely collapses, rendering class certification inappropriate." *Goldman Sachs Group, Inc.* v. *Arkansas Teacher Retirement System*, 141 S. Ct. 1951, 1959 (2021) (internal quotation marks and citation omitted). And if a defendant establishes that some but not all of the alleged misrepresentations had no price impact, then *Basic*'s fundamental premise collapses for those representations—and class certification is inappropriate as to those representations.

That logic applies with equal force to the corrective disclosures that correspond to alleged misrepresentations lacking price impact. Whether disclosures are "corrective" is relevant to the price-impact inquiry if the plaintiffs rely on them to "claim that the price drop" is evidence of "inflation maintained by the earlier misrepresentation." *Goldman Sachs*, 141 S. Ct. at 1961. If there is a "mismatch" between the misrepresentation and the corrective disclosure, or if the corrective disclosure is not "associated" with a price drop, then the *Basic* presumption's fundamental premise collapses for the corrective disclosure and any earlier misrepresentations they are alleged to have corrected. *Id.* With respect to those allegedly corresponding statements, therefore, class certification must be denied.

8

b.    That conclusion is consistent with fundamental principles of class certification.  A district court must conduct a "rigorous analysis" to determine that the requirements for certification have been met.  *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 33 (2013).  The decision whether to certify a class "is not an all-or-nothing proposition," and certification may be appropriate for "some of the class's claims but not others."  *Simpson* v. *Dart*, 23 F.4th 706, 713 (7th Cir. 2022).  Rule 23(c)(1)(B) thus requires the certification order to "define" the "class claims, issues, or defenses," and appellate courts have required class-certification orders to include a "readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis."  *Wachtel ex rel. Jesse* v. *Guardian Life Insurance Co.*, 453 F.3d 179, 187-188 (3d Cir. 2006); *see also In re Pharmaceutical Industry Average Wholesale Price Litigation*, 588 F.3d 24, 39 (1st Cir. 2009) (similar).

Applying those principles here, the district court was required to conduct a rigorous analysis into whether *each* (not just all or none) of plaintiffs' claims should have proceeded as "class claims."  And it should have excluded from the class any claims for which the *Basic* presumption was not appropriate.  Thus, as other courts have recognized, a judge should deny class certification in part if a defendant establishes that certain misrepresentations or corrective disclosures had no impact on the stock's price.  *See* p. 18 n.4, *infra* (citing cases).  The district court erred by refusing to do so.

9

2.     The district court refused to consider whether particular correc-
tive disclosures failed actually to affect the stock's price because, in the court's
view, that argument presented a "merits question" regarding "loss causation."
D. Ct. Dkt. 267, at 40 (citing *Monroe County*, 332 F.R.D. at 395-396).  That was
also erroneous.

The Supreme Court has repeatedly rejected the argument that a court
should ignore evidence regarding price impact simply because that evidence
also bears on the merits.  In *Goldman Sachs*, the Court emphasized that courts
should "take into account *all* record evidence relevance to price impact, re-
gardless whether that evidence overlaps with materiality or any other merits
issue." 141 S. Ct. at 1961.  In *Halliburton II*, the Court approved a defendant's
introduction of price-impact evidence even though that evidence had been in-
voked to "disprove loss causation."  573 U.S. at 265, 282-284.  And in *Amgen
Inc.* v. *Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013), the
Court again explained that merits questions can be considered "to the extent"
they are relevant to assessing class-certification prerequisites.  *Id.* at 466.  It
"cannot be helped" that the "rigorous analysis" necessary for class certifica-
tion will "frequently" "entail some overlap with the merits of the plaintiff's un-
derlying claim."  *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 351 (2011);
*Johnson* v. *Nextel Communications Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)
(same).

10

The district court was required to consider all evidence and arguments relevant to the question whether defendants proved a lack of price impact. And when a plaintiff claims that a price drop "associated" with a "negative disclosure about a company" is indirect evidence of front-end price impact, *Goldman Sachs*, 141 S. Ct. at 1961, whether that corrective disclosure actually affected the stock price is relevant to price impact. It does not matter that the defendant's arguments might overlap with loss-causation arguments, and the district court erred by concluding otherwise.

3.  The district court's apparent view that plaintiffs should be allowed to proceed on a classwide basis for all claims if there is a viable theory for any claim led the court astray in another manner: it wrongly extended the class period two days after the last corrective disclosure on May 24. The *Basic* presumption assumes that efficient markets rapidly incorporate new information relevant to value. *See* 485 U.S. at 246; *Waggoner* v. *Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017); *Meyer* v. *Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013). Any information released by the last corrective disclosure before the market opened on May 24 must have been incorporated into the price at least by the end of that day. As defendants argued below, *see* D. Ct. Dkt. 237, at 17, the class period cannot be extended two days after any price impact of the alleged misrepresentations must have dissipated, and in certifying the full class without a word of explanation the court confirmed that it did not conduct the

necessary "rigorous analysis" to determine whether class certification was appropriate for all proposed claims and the entire proposed period. *Comcast*, 569 U.S. at 33.

### B. The Absence Of Statistically Significant Price Movements Following Corrective Disclosures Shows A Lack Of Price Impact

The district court also reasoned that defendants had failed to show a lack of price impact because the corrective disclosures were "accompanied by an abnormal return, even if the difference was not statistically significant." D. Ct. Dkt. 267, at 40. That conclusion is inconsistent with established law and reflects a fundamental misunderstanding of the relevant statistical principles.

1. As an initial matter, the district court flouted established law. In assessing price impact, a court should consider "*all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense." *Goldman Sachs*, 141 S. Ct. at 1960 (citation omitted). And when the court assesses that evidence, the only question is "whether it is more likely than not" that the alleged misrepresentation affected the price. *Id.* at 1963. The defendant's burden of persuasion is "unlikely to make much difference on the ground," because it kicks in only if the evidence is in perfect equipoise. *Id.*

In this case, the district court seemed to recognize that plaintiffs' class-certification motion relied on an inflation-maintenance theory. *See* D. Ct. Dkt. 267, at 42 (citing *Waggoner*, 875 F.3d at 104 (explaining that price impact can

be shown through "statements that merely maintain inflation")). Under such a theory, a plaintiff tries to "prove the amount of inflation indirectly" by showing that a "price drop" following a corrective disclosure is "equal to the amount of inflation maintained by the earlier misrepresentation." *Goldman Sachs*, 141 S. Ct. at 1961. Here, plaintiffs did not proffer any "front-end" evidence that any misrepresentation affected the stock price, instead relying on the "inference" that the "back-end price drop" revealed "front-end inflation." *Id.*; *see also* D. Ct. Dkt. 248, at 7-10 (plaintiffs' reply in support of class certification); D. Ct. Dkt 248-4, at 9-29 (¶¶ 17-58) (plaintiffs' expert's rebuttal report).

But defendants' expert showed—and plaintiffs' expert conceded—that the back-end price movement on four of the alleged corrective disclosure dates was not statistically significant. *See* D. Ct. Dkt. 237-14, Ex. 1 (defendants' expert's report); D. Ct. Dkt. 237-11, at 69, 72, 78-79 (deposition of plaintiffs' expert). With respect to those corrective disclosures (and corresponding misstatements), the district court should have concluded that it was more likely than not that there was no price impact, and thus that defendants had satisfied their burden. If a plaintiff never introduces any front-end evidence of price impact, and the only back-end evidence is statistically insignificant price movement, there is no basis for the court to find that price impact was "more likely than not." *Goldman Sachs*, 141 S. Ct. at 1963.

13

2.     The district court also misunderstood the statistical principles relevant to whether a defendant has rebutted the *Basic* presumption.  The Supreme Court has endorsed event studies as a mechanism to determine whether changes to "the market price of the defendant's stock" occur because of certain "discrete events"—including particular statements from the defendant—or instead because of other movements in the market that have nothing to do with those events.  *Halliburton II*, 573 U.S. at 280-281.  This Court has explained that those studies allow experts to "disentangle[]" price movements from "information that is specific to the firm" and "information that is likely to affect stock prices market wide," and that inquiry allows the expert to "determine whether, and the extent to which, the release of certain information caused a stock price to fall."  *In re Vivendi*, 838 F.3d 223, 253 (2016) (citation omitted); *see also In re Pfizer, Inc.*, 819 F.3d 642, 649 (2d Cir. 2016).  Those statistical studies are the gold standard for determining whether a misrepresentation or corrective disclosure affects the price of a stock.  *See, e.g.*, *In re Vivendi Universal, S.A.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009).

The district court's reliance on "abnormal returns" that are not statistically significant misunderstands the relevant statistical principles.  Stock price movements invariably reflect some degree of randomness.  *See* S.P. Kothari & Jerold B. Warner, *Econometrics of Event Studies* 11 (2007).  Accordingly, as plaintiffs' expert explained, an event study is designed to test only whether

14

"deviation from expected price movements is sufficiently large that simple random movement can be rejected as the cause." D. Ct. Dkt. 198-3, at 22 (¶ 48). When an event study reveals that deviations from the expected price were "abnormal" but not "statistically significant," it means that the movement in the stock price *cannot* be ruled out as "randomness." *Id.* at 25 (¶ 56). Thus, as this Court explained, movement that is not statistically significant is "indistinguishable from random price fluctuations," and that random movement "cannot be attributed to company-specific information announced on the event date." *Arkansas Teacher Retirement System* v. *Goldman Sachs Group, Inc.*, 879 F.3d 474, 481 n.5 (2d Cir. 2018).

That statistical finding is relevant to the legal question of whether there was price impact, because an abnormal return that is not statistically significant is statistically "indistinguishable from random price fluctuations." *Arkansas Teacher*, 879 F.3d at 481 n.5; *see* David H. Kaye & David A. Freedman, *Reference Guide on Statistics* 254 (3d ed. 2011). When there is no other front-end evidence of price impact because the plaintiff has elected to proceed under an inflation-maintenance theory, and when there is no other back-end evidence of price impact either, there is no reason to infer that price impact was more likely than not.

A contrary conclusion would render event studies virtually pointless and the *Basic* presumption rebuttable in theory but not in fact—both contrary to

15

the Supreme Court's express instructions. As noted, the Court has explained that "event studies" may be introduced to disprove price impact, *Halliburton II*, 573 U.S. at 280-281, but the district court's rule would mean that an event study does not suffice for that purpose even when it shows that a price movement is not statistically significant and when there is no other evidence of price impact. And if an event study cannot suffice to disprove price impact, it is not obvious when, if ever, a defendant could rebut the *Basic* presumption. After all, the on-the-ground implication of the district court's approach is that a plaintiff can prevent a defendant from rebutting price impact simply by identifying a negative "abnormal" return on the day of any one corrective disclosure—even if that return is statistically indistinguishable from random chance.

## C.    Review Under Rule 23(f) Is Warranted

Interlocutory review is warranted here because (1) "the certification order implicates a legal question about which there is a compelling need for immediate resolution" or (2) "the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable." *In re Sumitomo Copper Litigation*, 262 F.3d 134, 139 (2d Cir. 2001). At minimum, the Court should grant the petition and hold the case in abeyance pending the related decision in *Arkansas Teacher*

*Retirement System* v. *Goldman Sachs Group, Inc.*, No. 22-484 (2d Cir. argued Sept. 21, 2022).

1.    There is a compelling need to resolve each of the questions presented.  As an initial matter, the district court's "application of the fraud-on-the-market doctrine" will have a "significant effect on the law of class actions." *Hevesi* v. *Citigroup Inc.*, 366 F.3d 70, 77 (2004).  And questions regarding the *Basic* presumption are particularly "likely to escape effective review after entry of final judgment," *id.* at 80, because "[c]ertification of a large class may so increase the defendant's potential damages liability and litigation costs" that the defendant "may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 476 (1978).  Given the significance of the *Basic* presumption and the hydraulic pressure to settle, this Court has repeatedly granted Rule 23(f) petitions to resolve important questions about its applicability.[2]  All of the reasons that questions about the *Basic* presumption make good candidates for interlocutory review apply with equal force here.

---

[2] *See Arkansas Teacher Retirement System* v. *Goldman Sachs Group, Inc.*, No. 22-484 (2d Cir. argued Sept. 21, 2022); *Arkansas Teacher Retirement System* v. *Goldman Sachs Group, Inc.*, 955 F.3d 254, 263 (2d Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 1951 (2021); *Arkansas Teacher*, 879 F.3d at 482; *Waggoner*, 875 F.3d at 92; *In re Petrobras Securities*, 862 F.3d 250, 260 (2d Cir. 2017); *In re Salomon Analyst Metromedia Litigation*, 544 F.3d 474, 479-480 (2d Cir. 2008); *Teamsters Local 445 Freight Division Pension Fund* v. *Bombardier Inc.*, 546 F.3d 196, 200 (2d Cir. 2008); *Hevesi*, 366 F.3d at 77.

Each of the questions presented is also uniquely important for the development of the law of securities class actions. As to the first question: district courts are in sore need of guidance on what to do if some but not all corrective disclosures do not affect the stock's price. Some courts have adopted the reasoning of the decision below, explaining that, when a defendant concedes that at least one corrective disclosure had a statistically significant effect on the price, the defendant necessarily fails to prove a complete absence of price impact and cannot rebut the *Basic* presumption.[3] Other courts have rejected that approach, reasoning that the corrective disclosures should be analyzed individually and sometimes excluded from the relevant class.[4]

Which of those approaches is correct is critically important. *First*, if a plaintiff need identify only one statistically significant price movement, it would encourage a plaintiff to reverse-engineer a certification-worthy case by identifying every day with a big stock drop, finding a related statement, and hoping the defendant is required to concede at least one. *Second*, as a practical

---

[3] *See, e.g.*, *St. Clair County Employees' Retirement System* v. *Acadia Healthcare Co.*, Civ. No. 18-988, 2022 WL 4598044, at *5 (M.D. Tenn. Sept. 30, 2022); *In re CenturyLink Sales Practices and Securities Litigation*, 337 F.R.D. 193, 210-211 (D. Minn. 2020); *Monroe County*, 332 F.R.D. at 395.

[4] *See, e.g.*, *Allegheny County Employees' Retirement System* v. *Energy Transfer LP*, Civ. No. 20-200, 2022 WL 3597200, at *22 (E.D. Pa. Aug. 23, 2022); *In re Intuitive Surgical Securities Litigation*, Civ. No. 13-1920, 2016 WL 7425926, at *14-*17 (N.D. Cal. Dec. 22, 2016); *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 309 F.R.D. 251, 280 (N.D. Tex. 2015).

18

matter, an expansive class that exposes a defendant to many times the damages (when compared to the appropriately sized class) could impose just as much undue settlement pressure as a small class that should not have been certified at all.

As to the second question presented: other district courts have misunderstood the appropriate burden of proof in a way that has made it virtually impossible to rebut price impact. As in this case, other courts have reasoned that the lack of statistical significance "does not prove that the event had no impact on the stock price." *Carpenters Pension Trust Fund of St. Louis* v. *Barclays PLC*, 310 F.R.D. 69, 95 (S.D.N.Y. 2015).[5] But as explained, that rule misunderstands the limits of the statistical analysis used for event studies, which are not designed to do more than show the absence of statistically significant price impact. *See* pp. 14-16, *supra*. And a defendant should not be faulted for the limits of statistical analysis.

The district court's ruling here illustrates the virtually impossible burden imposed on defendants in securities class actions today. Plaintiffs have never explained when the alleged misrepresentations inflated the stock's

---

[5] *See also, e.g.*, *Vizirgianakis* v. *Aeterna Zentaris, Inc.*, 775 Fed. Appx. 51, 53 (3d Cir. 2019); *Li* v. *Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 345 (D.N.J. 2018); *Di Donato* v. *Insys Therapeutics, Inc.*, 333 F.R.D. 427, 444 (D. Ariz. 2019); *but see In re Finisar Corp.*, Civ. No. 11-1252, 2017 WL 6026244, at *9 (N.D. Cal. Dec. 5, 2017) (denying class certification where the "challenged statements did not result in a statistically significant increase" in stock price).

price. Accordingly, the district court's finding of price impact turns on the "inference" that a "back-end price drop" associated with a corrective disclosure implies "front-end" inflation at some unspecified point. *Goldman Sachs*, 141 S. Ct. at 1961. Presented with such a theory and such evidence, a defendant seeking to disprove price impact would need to introduce evidence undermining the "inference" from the price effect of the corrective disclosure to the price effect of the misrepresentation. One way to do that would be qualitative—*e.g.*, by pointing to the "mismatch" between the information in the corrective disclosure and the information in the alleged misrepresentation. *Id.*

Where no such mismatch can be shown, a defendant can still undermine the inference by showing that there is no reason to think that the corrective disclosure affected the price at all. But the district court held that the best evidence that statistical analysis can offer—*i.e.*, a showing that the price movement is statistically indistinguishable from random variation—is not enough to show that the corrective disclosure did not affect the stock's price. In effect, the district court's rule appears to be that a defendant cannot rebut the *Basic* presumption as long as, on the day of any single corrective disclosure selected by the plaintiff, the stock price underperformed the particular industry or the market as a whole by any amount.

That cannot be the law. As this Court is well aware, the inflation-maintenance theory is increasingly common and increasingly threatens to undermine

defendants' ability to rebut the *Basic* presumption since *Halliburton II*. *See Arkansas Teacher*, 955 F.3d at 266 n.9. The two critical holdings in this case further undermine the Supreme Court's instruction that "defendants must be afforded an opportunity before class certification to defeat the [*Basic*] presumption." *Halliburton II*, 573 U.S. at 284. This Court should grant the petition to review those holdings.

2. The district court's certification of the class will also "effectively terminate the litigation" because it may "force [defendants] to settle the case rather than risk trial." *Sumitomo*, 262 F.3d at 139. Plaintiffs allege that Alexion's market capitalization fell by more than $10 billion during the class period. *See* D. Ct. Dkt. 121, at 100 (¶ 339). While plaintiffs grossly overstate their alleged losses, the district court's order, by certifying an unjustifiably broad class definition, increases defendants' exposure and places "inordinate or hydraulic pressure on defendants to settle" all claims against them. *Hevesi*, 366 F.3d at 80 (citation omitted). And defendants will be faced with that pressure even though they have "meritorious defense[s]," *Coopers & Lybrand*, 437 U.S. at 476, on which they would likely prevail if the case proceeded to summary judgment or trial.

3. If the Court has any doubts regarding whether Rule 23(f) warrants review of the decision below, it should grant the petition and hold it in abeyance pending resolution of the decision in *Arkansas Teacher Retirement*

*System* v. *Goldman Sachs Group, Inc.*, No. 22-484 (argued Sept. 21, 2022). That decision may clarify both the relevance of evidence of "back-end" price drops in determining whether a particular misrepresentation had price impact and the defendants' burden to rebut the *Basic* presumption. If the Court does grant and hold the petition, it could vacate and remand in light of its decision in *Goldman Sachs*. *See, e.g.*, *In re Trivity Health, Inc.*, No. 22-502, 2022 WL 17243323 (6th Cir. Nov. 21, 2022). Or the Court could later resolve this case with the benefit of full briefing, including on the effect of *Goldman Sachs*. *See Saloman Analyst*, 544 F.3d at 479-480.

## CONCLUSION

The petition for permission to appeal should be granted.

Respectfully submitted,

/s/ Kannon K. Shanmugam

| | |
|---|---|
| DANIEL J. KRAMER | KANNON K. SHANMUGAM |
| AUDRA SOLOWAY | JANE O'BRIEN |
| GREGORY LAUFER | E. GARRETT WEST |
| JONATHAN HURWITZ | ANDREW J. TOPAL |
| TAMAR HOLOSHITZ | PAUL, WEISS, RIFKIND, |
| PAUL, WEISS, RIFKIND, | WHARTON & GARRISON LLP |
| WHARTON & GARRISON LLP | *2001 K Street, N.W.* |
| *1285 Avenue of the Americas* | *Washington, DC 20006* |
| *New York, NY 10019* | *(202) 223-7300* |
| | *kshanmugam@paulweiss.com* |

APRIL 27, 2023

## CERTIFICATE OF COMPLIANCE

This Petition for Permission to Appeal From Order Granting Class Certification Pursuant to Federal Rule of Civil Procedure 23(f) complies with the type-volume limitation of Fed. R. App. 5(c) because the petition contains 5,196 words, excluding the parts of the petition exempted by Fed. R. App. 32(f). This petition complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because the petition has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point CenturyExpd BT font.

APRIL 27, 2023                                   /s/ Kannon K. Shanmugm
                                                 KANNON K. SHANMUGAM

## CERTIFICATE OF SERVICE

I, Kannon K. Shanmugam, counsel for defendants-petitioners and a member of the bar of this Court, certify that, on April 27, 2023, I caused true and accurate copies of the foregoing Petition for Permission to Appeal From Order Granting Class Certification Pursuant to Federal Rule of Civil Procedure 23(f) to be served by e-mail and by mail upon the following counsel:

| | |
|---|---|
| **David A. Slossberg**<br>Hurwitz Sagarin Slossberg & Knuff, LLC<br>147 N. Broad Street<br>Milford, CT 06460<br>Email: dslossberg@hssklaw.com | **Jeffrey P. Nichols**<br>Hurwitz Sagarin Slossberg & Knuff LLC<br>147 North Broad St., PO Box 112<br>Milford, CT 06460-0112<br>Email: jnichols@hssklaw.com |
| **Joseph P. Guglielmo**<br>ScottScott, Attorneys at Law, LLP<br>The Helmsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Email: jguglielmo@scott-scott.com | **Sabrina E. Tirabassi**<br>Robbins Gueller Rudman & Dowd, LLP-FL<br>120 East Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432<br>Email: stirabassi@rgrdlaw.com |
| **Jonathan P. Whitcomb**<br>Diserio Martin O'Connor & Castiglioni LLP<br>1010 Washington Boulevard<br>Suite 800<br>Stamford, CT 06901<br>Email: jwhitcomb@dmoc.com | **Alfred L. Fatale , III.**<br>Labaton Sucharow LLP-NY<br>140 Broadway, 33rd Floor<br>New York, NY 10005<br>Email: afatale@labaton.com |
| **Andrew P. Arnold**<br>Motley Rice, LLC-SC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC<br>Email: aarnold@motleyrice.com | **Christopher J. Keller**<br>Labaton Sucharow LLP-NY<br>140 Broadway, 33rd Floor<br>New York, NY 10005<br>Email: ckeller@labaton.com |

| | |
|---|---|
| **Christopher F. Moriarty**<br>Motley Rice LLC<br>28 Bridgeside Boulevard<br>Mount Pleasant, SC 29464<br>Email: cmoriarty@motleyrice.com | **Eric J. Belfi**<br>Labaton Sucharow LLP<br>140 Broadway<br>New York, NY 10005<br>Email: ebelfi@labaton.com |
| **Francis P. McConville**<br>Labaton Sucharow LLP<br>140 Broadway<br>New York, NY 10005<br>Email: fmcconville@labaton.com | **Gregg S. Levin**<br>Motley Rice LLC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464<br>Email: glevin@motleyrice.com |
| **James T. Christie**<br>Labaton Sucharow LLP-NY<br>140 Broadway, 33rd Floor<br>New York, NY 10005<br>Email: jchristie@labaton.com | **James M. Hughes**<br>Motley Rice LLC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464<br>Email: jhughes@motleyrice.com |
| **Joshua C. Littlejohn**<br>Motley Rice, LLC-SC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC<br>Email: jlittlejohn@motleyrice.com | **Mathew P. Jasinski**<br>Motley Rice LLC<br>One Corporate Ctr., 17th Fl.<br>20 Church St.<br>Hartford, CT 06103<br>Email: mjasinski@motleyrice.com |
| **Meredith Weatherby**<br>Motley Rice LLC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464<br>Email: mweatherby@motleyrice.com | **Ross M. Kamhi**<br>Labaton Sucharow LLP-NY<br>140 Broadway, 33rd Floor<br>New York, NY 10005<br>Email: rkamhi@labaton.com |
| **William S. Norton**<br>Motley Rice, LLC-SC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC<br>Email: bnorton@motleyrice.com | **James W. Johnson**<br>Labaton Sucharow LLP-NY<br>140 Broadway, 33rd Floor<br>New York, NY 10005<br>Email: JJohnson@labaton.com |
| **Michael H. Rogers**<br>Labaton Sucharow LLP-NY<br>140 Broadway, 33rd Floor<br>New York, NY 10005<br>Email: mrogers@labaton.com | **William H. Narwold**<br>Motley Rice LLC<br>One Corporate Ctr., 17th Fl.<br>20 Church St.<br>Hartford, CT 06103<br>Email: bnarwold@motleyrice.com |

| **Ari J. Hoffman** | **Jarett Sena** |
| --- | --- |
| Cohen & Wolf, P.C. | Rolnick Kramer Sadighi LLP |
| 1115 Broad St., Po Box 1821 | 1251 Avenue of the Americas |
| Bridgeport, CT 06604 | New York, NY 10020 |
| Email: ahoffman@cohenandwolf.com | Email: jsena@rksllp.com |
| **Marc Kramer** | **David A. Ball** |
| Rolnick Kramer Sadighi LLP | Cohen & Wolf, P.C. |
| 1251 Avenue of the Americas | 1115 Broad St., Po Box 1821 |
| New York, NY 10020 | Bridgeport, CT 06604 |
| Email: mkramer@rksllp.com | Email: dball@cohenandwolf.com |

/s/ Kannon K. Shanmugam

KANNON K. SHANMUGAM

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
BOSTON RETIREMENT SYSTEM,        :
Individually and On Behalf of    :
All Others Similarly Situated,   :
                                 :
          Plaintiff,             :
                                 :
v.                               :
                                 :  Civil No. 3:16-cv-2127 (AWT)
ALEXION PHARMACEUTICALS, INC.,   :
LEONARD BELL, DAVID L. HALLAL,   :
VIKAS SINHA, DAVID BRENNAN,      :
DAVID J. ANDERSON, LUDWIG N.     :
HANTSON, and CARSTEN THIEL,      :
                                 :
          Defendants.            :
------------------------------ x
```

## RULING ON MOTION FOR CLASS CERTIFICATION

Lead Plaintiffs Erste-Sparinvest Kapitalanlagegesellschaft mbH ("Erste") and the Public Employee Retirement System of Idaho ("PERSI") move for class certification pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and appointment of class representatives and co-class counsel. For the reasons set forth below, the plaintiffs' motion is being granted.

### I.   BACKGROUND

Alexion is a Boston, Massachusetts-based pharmaceutical company that specializes in the development and manufacture of drugs used to treat diseases affecting fewer than 200,000 people in the United States. Between January 2014 and May 2017, Alexion

had only one commercial drug, Soliris, which is used to reduce symptoms of paroxysmal nocturnal hemoglobinuria ("PNH") and atypical hemolytic uremic syndrome ("aHUS"). During this time period, Soliris was Alexion's only money-making drug.

The defendants attributed growing revenue from sales of Soliris to increased physician demand for the drug in other countries, as a result of Alexion conducting successful disease-education programs that helped to identify new patients with PNH and aHUS. The plaintiffs claim that the defendants' disease-awareness and diagnostic initiatives, which increased sales of Soliris, were illegal and unethical. The plaintiffs claim that these practices included pressuring or frightening patients and physicians to begin or continue treatment with Soliris, obtaining confidential personal health information in violation of the Health Insurance Portability and Accountability Act, and funneling illegal kickbacks through charities in violation of federal law. The plaintiffs claim that investors became aware of these issues through a series of corrective disclosures that began in November 2016 with an announcement by Alexion that it was investigating whether employees violated company policies and procedures and ended in May 2017 with the publication of an article by Bloomberg examining the company's practices, which was based on interviews with confidential witnesses and a review of thousands of pages of internal documents. Between November 4,

2016 and May 24, 2017, the share price of Alexion stock declined more than thirty percent.

## II. LEGAL STANDARD

"A class may be certified only if, 'after a rigorous analysis,' the district court is satisfied that the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met." Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013)). Rule 23(a) sets forth the following four requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law and fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Although . . . a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent --

that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465–66 (2013) (quoting Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 365–66 (2011)).

Plaintiffs must also satisfy the requirements of Fed. R. Civ. P. 23(b). With respect to Rule 23(b)(3):

> A class action may be maintained if Rule 23(a) is satisfied and if . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

In addition, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing class

counsel, the court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A), in addition to "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B).

### III. DISCUSSION

The plaintiffs seek to certify the following class pursuant to Rule 23(a) and 23(b)(3):

> All persons or entities who purchased or otherwise acquired the publicly traded common stock of Alexion Pharmaceuticals, Inc. from January 30, 2014 to May 26, 2017, inclusive (the "Class Period") and who were damaged thereby (the "Class").

Pls.' Mem. (ECF No. 198-1) at 3.[1]

In addition, in accordance with Rule 23(g), the plaintiffs "request that the Court appoint Motley Rice and Labaton Sucharow

---

[1] "Excluded from the Class are Defendants; members of the immediate families of the Individual Defendants; Alexion's subsidiaries and affiliates; any person who is or was an officer or director of Alexion or any of the Company's subsidiaries or affiliates during the Class Period; any entity in which any Defendant has a controlling interest; and the legal representatives, heirs, successors, and assigns of any such excluded person or entity." Pls.' Mem. at 3 n.3.

as Co-Class Counsel." Id. at 31.

### A. Rule 23(a)

#### 1. Numerosity

With respect to the first requirement under Rule 23(a), "numerosity is 'presumed at a level of 40 members.'" Leber v. Citigroup 401(k) Plan Inv. Comm., 323 F.R.D. 145, 155 (S.D.N.Y. 2017) (quoting Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by showing that a large number of shares were outstanding and traded during the relevant period." In re Bank of Am. Corp. Sec., Derivative, & Empl. Ret. Income Sec. Act (ERISA) Litig., 281 F.R.D. 134, 138 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). Here, "there were 197.8 million shares of Alexion common stock outstanding throughout the Class Period," and "1,381 separate institutions owned Alexion common stock during the Class Period." Pls.' Mem. at 6-7. In addition, "Alexion stock had an average weekly volume on the NASDAQ of 8.96 million shares." Id. at 7. Joinder on this scale would be impracticable. Thus, the plaintiffs have satisfied the numerosity requirement.

#### 2. Commonality and Typicality

With respect to the second requirement, "[c]ommonality requires the plaintiff to demonstrate that the class members

'have suffered the same injury.'" <u>Wal-Mart Stores, Inc. v.</u>
<u>Dukes</u>, 564 U.S. 338, 349-50 (2011) (quoting <u>Gen. Tel. Co. of Sw.</u>
<u>v. Falcon</u>, 457 U.S. 147, 156 (1982)). The proposed class's
"claims must depend upon a common contention . . . [which] must
be of such a nature that it is capable of classwide
resolution--which means that determination of its truth or
falsity will resolve an issue that is central to the validity of
each one of the claims in one stroke." <u>Id.</u> at 350.

With respect to the third requirement, typicality requires
that "each class member's claim [arise] from the same course of
events" and that "each class member [make] similar legal
arguments to prove the defendant's liability." <u>In re Flag</u>
<u>Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 35 (2d Cir.
2009) (quoting <u>Robidoux v. Celani</u>, 987 F.2d 931, 936 (2d Cir.
1993)). "Typicality does not require that the situations of the
named representatives and the class members be identical." <u>In re</u>
<u>Oxford Health Plans, Inc.</u>, 191 F.R.D. 369, 375 (S.D.N.Y. 2000).

Courts have held that "[t]he commonality and typicality
requirements of Rule 23(a) tend to merge." <u>Gen. Tel. Co. of Sw.</u>
<u>v. Falcon</u>, 457 U.S. 147, 157 n.13 (1982). Here, the lead
plaintiffs' claims and those of proposed class members "arise
out of the same misstatements and omissions in Defendants' SEC
filings and other public statements," and they present common
questions of law and fact. Pls.' Mem. at 8. "Other than

asserting that Plaintiff[s] [are] subject to a unique defense," the defendants do "not otherwise contest Plaintiffs' assertions that the commonality and typicality requirements of Rule 23(a) are met." Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 176 (S.D.N.Y. 2008). Thus, in light of the of the discussion below with respect to issues relating to unique defenses, the plaintiffs have satisfied the commonality and typicality requirements.

### 3. **Adequacy**

With respect to the fourth requirement, adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). In reviewing a class representative's adequacy, "[t]he focus is on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" Flag Telecom Holdings, Ltd., 574 F.3d at 35 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). "In order to defeat a motion for certification, however, the conflict must be fundamental." Id. (internal quotation marks and citations omitted). Thus, "a proposed class representative may not satisfy the adequacy prong if his or her case involves problems that 'could become the focus of cross-

examination and unique defenses at trial, to the detriment of
the class.'" Lapin, 254 F.R.D. at 177 (quoting In re NYSE
Specialists Sec. Litig., 240 F.R.D. 128, 144 (S.D.N.Y. 2007)).
"The defendant need not show at the certification stage that the
unique defense will prevail, only that it is meritorious enough
to require the plaintiff to devote considerable time to rebut
the unique defense." Id. at 179 (internal quotation marks and
citations omitted). In addition, "[a] lead plaintiff must also
possess a minimum threshold of knowledge about the case which,
considering the nature of the claim, is sufficient to make
reasonable decisions at critical stages of the litigation." Id.
at 176 (internal quotation marks and citations omitted).

The defendants contend that Erste and PERSI are inadequate
class representatives for three reasons. First, the defendants
argue that Erste and PERSI are each subject to a unique defense
which might "threaten to become the focus of the litigation"
because neither relied on the alleged misrepresentations. Baffa,
222 F.3d at 59. See Defs.' Opp. (ECF No. 237) at 4 ("Erste . . .
demonstrably did not rely on the alleged misrepresentations at
issue."); id. at 35 ("[N]either PERSI nor its investment
managers relied on the alleged misrepresentations."). Second,
the defendants argue that Erste "is subject to the unique
defense that it lacks standing under Austrian law to assert
claims for alleged losses incurred in its managed funds." Id. at

3. Third, the defendants argue that both Erste and PERSI are inadequate class representatives in terms of their management of litigation in this case. <u>See</u> <u>id.</u> at 29 ("Erste's unwillingness or inability to make its outside investment managers available for discovery also renders Erste an inappropriate class representative."); <u>id.</u> at 34 ("Erste is inadequate because it has not coordinated with PERSI in managing the litigation."); <u>id.</u> at 40 ("PERSI has been minimally involved in this litigation.").

### a. <u>Reliance on Alleged Misrepresentations</u>

The defendants have not shown that either Erste or PERSI is subject to a unique defense that is meritorious enough to require them to devote considerable time to rebut it and thus threatens to become the focus of the litigation.

### i. <u>Transactions During the Class Period</u>

The defendants contend that Erste is an inadequate class representative because "[t]wo of the three Erste funds-- including the internally managed fund--bought and held substantial quantities of Alexion stock after the alleged corrective disclosures, and after Erste concluded that Alexion had committed securities fraud and sought appointment as lead plaintiff in this case." Defs.' Opp. at 33. The Class Period in this action includes all dates "between January 30, 2014 and May 26, 2017, inclusive." Am. Compl. at 1. By January 2017, "Erste

believe[d] that the defendants had committed securities fraud," Exh. 9, Defs.' Opp. (ECF No. 237-10), at 11 of 38, Ln. 3-8, and on April 12, 2017, Erste was appointed as a lead plaintiff in this action, see Appointment of Lead Pl. and Lead Counsel (ECF No. 44). Erste's "Biotec fund purchased 20,000 shares of Alexion stock on April 24, 2017," Exh. 9, Defs.' Opp., at 11 of 38, Ln. 14-18, and the Biotec fund still held Alexion stock several months later, see Exh. 19, Defs.' Opp. (ECF No. 237-20), at 1, 5 of 6. In addition, Erste's Passive World Equities Fund continued to hold Alexion stock. The defendants contend that this purchase and these holdings "after the alleged corrective disclosures plainly show a lack of reliance." Defs.' Opp. at 33.

Similarly, the defendants maintain that PERSI is atypical because it "both purchased and sold Alexion securities during the class period," including sales by PERSI of "more than 40,000 shares of Alexion stock" "[t]hroughout the class period." Defs.' Opp. at 39.

Although post-disclosure purchasers may be "subject to unique defenses" that "threaten to become the focus of the litigation," that is not the situation here. George v. China Auto. Sys., Inc., 2013 WL 3357170, at *6-7 (S.D.N.Y. July 3, 2013).

First, the defendants made only partial disclosures in the lead-up to Biotec's purchase of Alexion shares on April 24,

2017, and the plaintiff's claim is that these "partial disclosures made during the Class Period were coupled with misrepresentations and omissions that continued to mislead investors," KBC Asset Mgmt. NV v. 3D Sys. Corp., 2017 WL 4297450, at *4 (D.S.C. Sept. 28, 2017), at least until further developments on May 8, May 23, and May 24, 2017, see Am. Compl. ¶¶ 202-20. See also In re Moody's Corp. Sec. Litig., 274 F.R.D. 480, 487 (S.D.N.Y. 2011) ("A corrective disclosure is some public statement, not necessarily from the company itself, which reveals to the market the falsity of a prior representation."). The PERSI sale was on March 22, 2017 and the Biotec purchase was on April 24, 2017. After these disclosures in May 2017, the price of Alexion shares fell from $129.12 at opening on May 8, 2017 to $97.70 at closing on May 26, 2017. See id. ¶¶ 207, 219. Thus, the plaintiffs contend that it was not until May 2017 that "the investing public" became aware of "the scope of the Company's pervasive misconduct." Id. ¶ 201. While Erste may have suspected that Alexion engaged in improper conduct in January 2017, it was unaware before May 2017 that "the conduct already disclosed," i.e., pull-in sales, was not in fact "the extent of Alexion's improper conduct." Id. ¶ 199. Given Alexion's status as a publicly traded company with hundreds of millions of shares, it is likely that Erste and PERSI are not the only potential class members that bought or sold Alexion shares

between the defendants' disclosures in January 2017 and the additional disclosures in May 2017. Thus, Erste's purchase of Alexion shares before these additional disclosures in May 2017 does not present a time-consuming unique defense that would render Erste inadequate or atypical with respect to its ability to represent other class members.

Second, while certain post-disclosure purchases may render plaintiffs "atypical when those plaintiffs possessed information that had not been disclosed to the investing public or when plaintiffs made a 'disproportionately large percentage' of their purchases post-disclosure, those circumstances are simply not present here." City of Livonia Employees' Ret. Sys. v. Wyeth, 284 F.R.D. 173, 178 (S.D.N.Y. 2012) (quoting In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 204 n.13 (E.D. Pa. 2008)).

As to Erste, Biotec's April 24, 2017 purchase accounted for just over fourteen percent of its purchases of 138,750 shares of Alexion stock during the Class Period. See Sch. A, Erste Cert. (ECF No. 70), at 3 of 4. The fact that Erste "purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [it] relied on the integrity of the market during the class period." Wyeth, 284 F.R.D. at 178 (quoting In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 135 (S.D.N.Y. 2008)). See In re Facebook, Inc., IPO Sec. &

*Derivative Litig.*, 288 F.R.D. 26, 38 (S.D.N.Y. 2012) ("[C]ourts have consistently rejected the argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements.").

As to PERSI, excluding shares PERSI received as a result of the Synageva BioPharma Corp. acquisition, PERSI engaged in 26 transactions involving Alexion shares during the Class Period. See Exh. A, PERSI Cert. (ECF No. 69), at 3 of 3. During the Class Period, PERSI purchased nearly 120,000 Alexion shares, and by March 21, 2017, it had sold less than three percent of those shares. See id. PERSI's March 22, 2017 sale of a third of its Alexion holdings, which was its largest sale and last transaction during the Class Period, does not show that PERSI engaged in "in-and-out" trading such as might make it atypical when compared to other traders during the same period. See Wilson v. LSB Indus., Inc., 2018 WL 3913115, at *6 (S.D.N.Y. Aug. 13, 2018) ("An 'in-and-out' trader who sells all of his shares before a company discloses information that corrects an earlier mistake may be subject to a unique defense insofar as he is unable to establish 'loss causation'--i.e., that the 'alleged loss was both foreseeable and caused by a materialization of the concealed risk.'" (quoting Moody's Corp., 274 F.R.D. 480, 487 (S.D.N.Y. 2011))). Here, PERSI still held the vast majority of its purchased Alexion shares at the end of the class period, and

the $97.70 price per share on May 26, 2017 was significantly lower than the price per share at which it purchased Alexion stock during the Class Period. See Exh. A, PERSI Cert., at 3 of 3 (lowest purchase price was $151.52 per share on Feb. 4, 2016).

Finally, even if the defendants have a potentially meritorious unique defense with respect to Erste or PERSI, the litigation of such a defense does not "threaten to become the focus of this litigation," Baffa, 222 F.3d at 59-60, "because it does not go to the heart of Plaintiff's case and will not require considerable time and effort to rebut," Lapin, 254 F.R.D. at 180. Any concern that Erste's purchase of Alexion stock in April 2017 will subject it to "unique inquiries regarding [its] trading patterns and why [it] made investment decisions, whether the fraud was in fact irrelevant to [its] purchasing and sale decisions, and whether on individual trades [it] profited" is offset by the fact that the defendants have identified only one purchase by Erste during the relevant period, and that purchase was made before significant revelations came to light in May 2017. George, 2013 WL 3357170, at *7. Any such concern with respect to PERSI is offset by the fact that, during the Class Period, PERSI made all its purchases of Alexion stock on or before June 2, 2016, well before even the first corrective disclosure identified in the Amended Complaint. See Am. Compl. ¶ 5; Exh. A, PERSI Cert., at 3 of 3.

### ii. Transactions After the Class Period

The defendants argue that "PERSI is not a typical class representative because it continued purchasing large amounts of Alexion stock after the end of the class period." Defs.' Opp. at 38. See also id. at 33 (discussing post-Class Period purchases by Erste). However as discussed above, the fact that plaintiffs "purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [they] relied on the integrity of the market during the class period." Wyeth, 284 F.R.D. at 178 (quoting Monster Worldwide, Inc., 251 F.R.D. at 135). See also Facebook, Inc., 288 F.R.D. at 38; Moody's Corp., 274 F.R.D. at 488 ("The decision to purchase shares after a fraud is revealed does not necessarily give rise to . . . an inference" that the plaintiff "did not rely on the alleged misrepresentations in his initial purchasing decisions."). Thus, PERSI's purchase transactions after the Class Period do not present a time-consuming unique defense that might threaten to become the focus of this litigation.

### iii. Inconsistent Contemporaneous Views

The defendants argue that "neither PERSI nor its investment managers relied on the alleged misrepresentations" because, first, "the views expressed by . . . PERSI's investment manager . . . at the time of the alleged corrective disclosures are

squarely inconsistent with plaintiffs' litigation position
here," and second, "neither PERSI nor its investment managers
relied on any alleged fraud or even the market price before
choosing to purchase Alexion securities." Defs.' Opp. at 35.

As to the first point, the defendants have not shown how
PERSI's investment manager's views are material to the
determination of whether PERSI acted in reliance on the market
price. As the Supreme Court has explained, "it is hard to
imagine that there is ever a buyer or seller who does not rely
on market integrity." Basic Inc. v. Levinson, 485 U.S. 224, 246-
47 (1988). Beach v. Healthways, Inc., cited by the defendants,
is inapposite because the investment manager in that case "met
with officers of the Company . . . individually" and "conducted
his own investigation" of the company. 2009 WL 3245393, at *5
(M.D. Tenn. Oct. 5, 2009). Those circumstances rendered the
plaintiff in that case "atypical" because the plaintiff, through
its investment manager, "possessed information that had not been
disclosed to the investing public." Wyeth, 284 F.R.D. at 178.
See Beach, 2009 WL 3245393, at *5 ("It is beyond reality to
suggest that any potential shareholder could meet with corporate
officers to discuss information that was already available to
the public. Personal contact with corporate officers and special
meetings at the company will render a plaintiff atypical to
represent the class." (quoting Grace v. Perception Tech. Corp.,

128 F.R.D. 165, 169 (D. Mass. 1989))).

The defendants' second point "is largely irrelevant in a case, like this, where plaintiff's theory of liability is premised on the 'fraud on the market' presumption that 'an investor's reliance on any public material misrepresentations ... may be presumed for purposes of a Rule 10b-5 action.'" Monster Worldwide, Inc., 251 F.R.D. at 134 (quoting Basic, 485 U.S. at 247). See also Wyeth, 284 F.R.D. at 179 (rejecting argument that the plaintiff was "atypical of the proposed class" because the plaintiff "and its investment managers did not rely on the stock market price or on [the defendant's] alleged misstatements and omissions"); In re Indep. Energy Holdings PLC Sec. Litig., 210 F.R.D. 476, 484 (S.D.N.Y. 2002) ("While the extent of any non-reliance on [the part of lead plaintiffs] will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members.").

### b.  **Standing**

The defendants argue that "Erste is an atypical class representative because it is subject to the unique defense that it does not have standing to prosecute claims . . . based upon losses incurred not by Erste, but by funds that it manages." Defs.' Opp. at 26. The defendants contend that although Erste may "dispose of assets in the funds" and "exercise the rights to

the assets" in accordance with Section 52 of the Austrian
Investment Funds Act, these rights do not extend to "tort claims
such as those asserted here that are not tied to continuing
ownership of the fund assets," which instead belong to "the
fund's investors" and to them alone "[a]bsent express
authorization" by the investors. Id. Thus, the defendants argue,
Erste lacks standing under Austrian law to pursue the claims at
issue here.

To have Article III standing, a party must have suffered an
injury-in-fact. See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte &
Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008). "As a general
rule, the 'injury-in-fact' requirement means that a plaintiff
must have personally suffered an injury.'" Id. at 107. "[T]he
minimum requirement for an injury-in-fact is that the plaintiff
have legal title to, or a proprietary interest in, the claim."
Id. at 108 However, this requirement does not foreclose "other
types of 'representative' litigation (in which one party sues
over another's injury)," including in cases in which the party
itself has not suffered a direct injury, where "historical
practice [has] supported it." Ass'n of Am. Physicians & Surgeons
v. U.S. Food & Drug Admin., 13 F.4th 531, 538 (6th Cir. 2021).
Thus, the Supreme Court has held that "a private 'relator' may
bring a 'qui tam' suit on behalf of the government," "an
assignee of a claim may sue over the claim even if the assignor

receives the proceeds," and "a party may sometimes sue as the 'next friend' of a person subject to a legal disability." Id. (citations omitted). Similarly, in Huff the court recognized "third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." Huff, 549 F.3d at 109. See id. at 109-10 (citing cases permitting suits by trustees, guardians ad litem, receivers, assignees, and executors). Although "the plaintiffs often possess some aspect of title to the underlying assets," as is true of trustees and receivers, this is not always the case, for example, in the case of guardians. In re Vivendi Universal, S.A. Sec. Litig., 605 F.Supp.2d 570, 576 (S.D.N.Y. 2009). Nevertheless, "owing to the special nature of their relationship to the assets' beneficial owners, the law grants these plaintiffs the right--if not imposes on them the duty--to bring these claims." Id. See also RESTATEMENT (SECOND) OF TRUSTS § 280 ("The trustee can maintain such actions at law and equity or other proceedings against a third person as he could maintain if he held the trust property free of trust."); id. § 281 ("Where the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the trust property free of trust, the beneficiary cannot maintain an action at law against the third person . . . [except when] the beneficiary is in

possession of the subject matter of the trust.").

Courts have generally found that investment management
companies and investment managers have standing under the
standard in <u>Huff</u> where such companies have "exclusive authority
to sue on behalf of their funds," i.e., where "[t]he funds are
not considered legal entities and so cannot bring suit on their
own behalf" and where "investors in the funds" may not "bring
suit," much less "have the ability to transfer or dispose of
fund assets." <u>Boynton Beach Firefighters' Pension Fund v. HCP,
Inc.</u>, 2017 WL 5759361, at *4 (N.D. Ohio Nov. 28, 2017). Under
such circumstances, the investment manager "has a close
relationship with its funds and investors" and "there is a
barrier to the funds and investors bringing suits." <u>Id.</u> <u>See</u>
<u>Vivendi Universal</u>, 605 F.Supp.2d at 581-82 (finding "that the
relationship between Austrian funds and their management
companies qualifies for the <u>Huff</u> exception" and that an Austrian
management company was "authorized to sue as a matter of law").
<u>See also</u> <u>OFI Risk Arbitrages v. Cooper Tire & Rubber Co.</u>, 63
F.Supp.3d 394, 404 (D. Del. 2014) (finding investment manager
had standing to sue where funds have "no legal personality and
cannot on their own" and where manager had "exclusive right" and
"legal mandate" to "engage in litigation on behalf of the . . .
funds").

First, Erste has demonstrated "a close relationship to the injured party," Huff, 549 F.3d at 109--i.e., to investors in the funds that Erste manages--akin to that which allows "[t]rustees [to] bring suits to benefit their trusts," id. at 109-10 (quoting Sprint Comms. Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 287 (2008)). See Sprint, 554 U.S. at 304 n.2 (Roberts, C.J., dissenting) (describing trustees' "independent fiduciary obligation to sue to preserve [investors'] assets" and the "discharge of [the trustee's] legal obligation [a]s an independent, personal benefit that supports the trustee's standing to sue in federal court"). Erste's relationship to the funds at issue here is regulated under the Austrian Investment Fund Act 2011 ("InvFG 2011").[2] With respect to the legislative history of the act, "the explanatory comments of the historic legislator to BGBl 1963/192" describe the investment manager as a trustee ("Treuhänder") of persons saving for investments ("Investmentsparer"). Thomale Decl. (ECF No. 237-16) at 28 n.96. See European Commission, Report from the Commission to the European Parliament and the Council Assessing Whether Member

---

[2] Two of Erste's three funds operate as Undertakings for Collective Investment in Transferable Securities (UCITS), or ordinary funds under Austrian law, while the third operates as a special fund under Austrian law. See Karollus Reply (ECF No. 248-5) ¶ 17. "[T]he applicable Austrian law for both types of funds is the same." Thomale Decl. (ECF No. 237-16) ¶ 27.

States Have Duly Identified and Made Subject to the Obligations of Directive (EU) 2015/849 All Trusts and Similar Legal Arrangements Governed Under Their Laws (Sept. 16, 2020) at 7 (describing certain kinds of "Treuhände" as "legal arrangements similar to trusts"). Under Austrian law, the management company is similar to a common-law trustee in that the company owes a fiduciary duty to investors. See InvFG 2011 § 52 ("[The management company] must protect the interests of the unitholders, exercise the diligence of a prudent manager . . . and comply with the provisions of this federal law and the ordinances issued on the basis of this federal law as well as the fund regulations."). It may be the case that, under Austrian law, as "under German law[,] the difference between legal and equitable title is not known." Tibor Tajti & Robert Whitman, *Common Law Trusts in Hungary and Other Continental European Civil Law Systems*, 49 J. Marshall L. Rev. 709, 709 n.1 (2016). But see Charles E. Rounds, Jr. & Andreas Dehio, *Publicly-Traded Open End Mutual Funds in Common Law and Civil Law Jurisdictions: A Comparison of Legal Structures*, 3 N.Y.U. J.L. & Bus. 473, 499 (2007) ("As is the case with a common law trustee, the Treuhänder takes legal title to the subject property."). Nevertheless, the "organizational structure [of Erste's funds] appears to be analogous to the structure of U.S. mutual funds," Karollus Reply (ECF No. 248-5) at 3 n.5, in that the "management

company is installed to act for the account of a fund" which is comprised "of the unit holders who are the co-owners of the fund's assets," id. at 3. Compare Charles E. Rounds, Jr., *State Common Law Aspects of the Global Unwindings in the Madoff Ponzi Scheme and the Sub-Prime Mortgage Securitization Debacle*, 27 Wis. Int'l L.J. 99, 109 (2009) ("In the case of a mutual fund that is sponsored by Fidelity, Vanguard, or the Bank of America, legal title to the underlying assets is held jointly by individual trustees who have contracted with the sponsor for investment management agency services.") with Jan-Michael Klett, *Die Prozessführungsbefugnis von Kapitalverwaltungsgesellschaften unter deutschem und US-amerikanischem Recht*, 72-19 Zeitschrift für Wirtschafts- und Bankrecht 892, 893 (stating that investment manager's "main task . . . is the comprehensive management of the deposit assets provided by the investors," "includ[ing] the investment of the investment fund"); id. at 896 (stating that in "funds with a co-ownership solution," the investment manager "has no legal title" to the underlying assets). Section 52 of the InvFG 2011 further underscores the trustee-like relationship that Erste, like managers of certain U.S. mutual funds, shares with investors: "Only the management company is entitled to dispose of the assets of a UCITS it manages and to exercise the rights to the assets; it acts in its own name for the account of the unitholders." Thomale Decl. at 21 n.79 (quoting InvFG 2011 §

52). Erste thus has "a close relationship to the injured party" for purposes of asserting third-party standing. <u>Huff</u>, 549 F.3d at 109.

Second, Erste has demonstrated that there is "a barrier to the injured party's ability to assert its own interests." <u>Id.</u> at 109. A barrier exists "[i]f there is some genuine obstacle to such assertion," not only when an obstacle is "insurmountable." <u>Singleton v. Wulff</u>, 428 U.S. 106, 116-17 (1976) (plurality opinion). <u>See</u> <u>Al-Aulaqi v. Obama</u>, 727 F.Supp.2d 1, 30 (D.D.C. 2010) (noting that "the presence of a hindrance or genuine obstacle preventing the third party from asserting his own legal rights reduces the likelihood that the third party's absence is due to the fact that his rights are either 'not truly at stake or not truly important to him'" (quoting <u>Singleton</u>, 428 U.S. at 116)).

Erste has shown that such a barrier exists with respect to the investment funds. "[I]nvestment funds, in contrast to companies, do not have any legal personality separate from the co-owning unit holders." Thomale Decl. ¶ 88(b). <u>See</u> <u>id.</u> at 13 n.42 ("A UCITS . . . has no legal personality of its own." (quoting InvFG 2011 § 46 para. 1)). <u>See also</u> Karollus Decl. (ECF No. 198-6) ¶ 18 ("The fund as such has no legal personality of its own."). It is uncontested that "[o]nly the management company is entitled to act for the account of a fund." <u>Id.</u> <u>See</u>

Thomale Decl. ¶ 57 ("[O]nly the management company is entitled to 'dispose of the assets' of a fund it manages and 'to exercise the rights to the assets.'" (quoting InvFG 2011 § 52)). Thus, the funds at issue have "no legal personality" and "cannot on their own" bring suit against the defendants to seek redress for any alleged wrongs. OFI Risk Arbitrages, 63 F.Supp.3d at 404.

In addition, Erste has shown that a genuine barrier exists with respect to the unit holders of the funds' assets. Under Austrian law, the management company "acts in its own name for the account of the unitholders" when it acts "to dispose of the assets of a UCITS it manages and to exercise the rights to the assets." Thomale Decl. at 21 n.79 (quoting InvFG 2011 § 57). This right is exclusive. See Karollus Decl. ¶ 22. Although unit holders co-own the funds' assets, they "can neither influence nor instruct the management company on how to manage the fund assets." Thomale Decl. ¶ 76. Their power is limited to their "right to divest [from the fund] at any time." Id. Insofar as the investment manager acts, it "act[s] in its own name on behalf of the unit holders," not directly "in the co-owning unit holders' names." Id. ¶ 75 (emphasis added). Thus, Erste--and not its funds or any particular unit holder--is the only party related to the funds that has a cause of action under Rule 10b-5 because Erste--and not its funds or any particular unit holder-- is the actual purchaser of Alexion stock. See Blue Chip Stamps

v. Manor Drug Stores, 421 U.S. 723, 731 (1975) ("[T]he plaintiff class in a Rule 10b-5 action [is] limited to actual purchasers and sellers."). The unit holders themselves "never purchased or sold shares of [Alexion], and thus could not themselves bring suit." In re Winstar Commc'ns Sec. Litig., 290 F.R.D. 437, 444 (S.D.N.Y. 2013).

Moreover, Erste's fiduciary relationship to the unit holders raises questions about the unit holders' ability to bring suit against the defendants. See RESTATEMENT (SECOND) OF TRUSTS § 281 ("Where the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the trust property free of trust, the beneficiary cannot maintain an action at law against the third person . . . [except when] the beneficiary is in possession of the subject matter of the trust.").

The defendants contend that Erste has not shown that it has a close relationship to the unit holders because "[t]he Second Circuit has held that making investment decisions on another's behalf 'is not the type of close relationship courts have recognized' for this purpose." Defs.' Opp. at 28 (quoting Huff, 549 F.3d at 110). In Huff, the Second Circuit rejected the plaintiff's argument that it had standing as an investment manager "because of its authority to make investment decisions on behalf of its clients." Huff, 549 F.3d at 109. The court

noted that "Huff's clients have not transferred ownership of, or title to, their claims to Huff" and that "Huff's power-of-attorney is not purported to be a valid assignment and does not confer a legal title to the claims Huff brings." Id. As the court explained, "Huff's only interest in this litigation as an attorney-in-fact is the recovery of its legal fees." Id. Here, the facts are different from the facts in Huff in material respects. Unlike the plaintiff in Huff, Erste has asserted standing on the basis of its fiduciary duties to the unit holders, and Erste has shown that it alone can act to recover losses to the funds, both on behalf of the funds themselves and on behalf of the unit holders. As other courts have held with respect to similarly situated plaintiffs, these facts are sufficient to establish that Erste has a close relationship with the unit holders of its funds. See HCI, 2017 WL 5759361, at *4; OFI Risk Arbitrages, 63 F.Supp.3d at 404; Winstar Commc'ns, 290 F.R.D. at 444; Vivendi Universal, 605 F.Supp.2d at 581-82.

The defendants also contend that, despite the opinion of Erste's expert, "Erste has made no showing that the funds' unit holders have any hindrance to asserting their own claims." Defs.' Opp. at 28. The defendants rely heavily on their own expert's declaration. See id. at 26 ("Under the Austrian Civil Code, co-owners (such as the unit holders here with respect to fund assets) have the right to assert tort claims for money

damages arising from losses relating to the assets."); id. at 27 ("Reading Section 52 of the Investment Funds Act . . . to divest individual unit holders of the right to pursue claims violates the fundamental Austrian legal principle that tort victims should not be precluded from asserting claims in their own behalf."). But as the defendants' expert recognizes, unit holders of Erste funds own merely "equal units" of "an aggregate portfolio of assets" which are "evidenced by securities." Thomale Decl. ¶ 36. The unit holders do not directly hold the individual components of the portfolio of assets, and they are unable to exercise control over purchases and sales of these individual components. See id. ¶ 63 ("[T]he management company has the exclusive competence to sell and buy or otherwise dispose of the fund assets."). In addition, the unit holders' primary--and perhaps sole--engagement with the fund is through the purchase and sale of units of the fund. See id. ¶ 44 ("[T]he unit holders of an investment fund do not engage with each other in any substantial way."); id. ¶ 76 ("[T]he unit holders of ordinary funds have the right to divest at any time."). It is not apparent how the unit holders, who purchased units of Erste funds but had no role in Erste's purchase of Alexion stock, could be considered actual purchasers of shares in Alexion so as to enable them to bring the claims that Erste has brought here.

In addition, the defendants contend that Erste "lacks standing under Austrian law to assert the claims in this action." Defs.' Opp. at 25. Here too, the defendants rely heavily on their expert's declaration. See Thomale Decl. ¶¶ 57-108 (reasoning that Austrian law does not allow Erste to sue on behalf of unit holders). The defendants argue specifically that the Austrian Investment Fund Act "does not give fund managers authority to pursue claims such as those asserted here that are not tied to continuing ownership of the fund assets." Defs.' Opp. at 27. But even if the defendants are correct,[3] the

---

[3] The court notes that "[a] management company may perform the following activities: . . . b) administration: aa) legal and fund management accounting services." Thomale Decl. at 10 n.28 (quoting InvFG 2011 § 5(2)(1)). Although the text never refers directly to litigation, this may reflect less an intent to prevent investment managers from conducting litigation than the reality that "[i]n the E.U., private shareholder litigation is rare, [and] fund investor litigation even more so." John C. Coates IV, *Reforming the Taxation and Regulation of Mutual Funds: A Comparative Legal and Economic Analysis*, 1 J. Legal Analysis 591, 650 (2009). See also Jan-Michael Klett, *Die Prozessführungsbefugnis von Kapitalverwaltungsgesellschaften unter deutschem und US-amerikanischem Recht*, 72-19 Zeitschrift für Wirtschafts- und Bankrecht at 895 (discussing how, under German law, if an investment manager "of a fund set up according to the co-ownership model were now denied the right to conduct proceedings, this would represent a fundamental deviation from the situation under procedural law in the case of the fiduciary solution and would thus lead to a result that was neither intended by the legislator nor sufficiently takes into account the historical background of the two alternative forms of investment").

defendants have not shown how the fact that Austrian law employs different formal categories to describe the relationship between Erste and its funds' unit holders means that Erste cannot establish that it has a trustee-like fiduciary duty to unit holders or a close relationship to them as required under Huff.

### c.    Management of Litigation

The defendants contend that Erste is "an inappropriate class representative" due to its "unwillingness or inability to make its outside investment managers available for discovery." Defs.' Opp. at 29. The defendants also contend that PERSI is inadequate because "PERSI has been minimally involved in this litigation." Id. at 40. The defendants contend that both are inadequate "because [Erste] has not coordinated with PERSI in managing the litigation." Id. at 34.

With respect to discovery disputes involving Erste, "courts may consider the honesty and trustworthiness of the named plaintiff" in judging "the adequacy of representation." Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998). Thus, "abusive discovery practices" may render plaintiffs "inadequate to serve as class representatives." McIntire v. China MediaExpress Holdings, Inc., 38 F.Supp.3d 415, 425 (S.D.N.Y. 2014). The defendants have not shown that any of the conduct that Erste "engaged in was serious enough to render [it] inadequate to represent the proposed Class and compel a denial

of Plaintiffs' class certification motion." Id. Nor have the
defendants shown that information they might have obtained or
might yet obtain from Erste's external managers relates to class
counsel's qualifications or Erste's ability to protect the
interests of the class.

With respect to the degree of PERSI's involvement in the
litigation, "class certification may properly be denied where
the class representatives have so little knowledge of and
involvement in the class action that they would be unable or
unwilling to protect the interests of the class against the
possibly competing interests of the attorneys." Flag Telecom
Holdings, Ltd., 574 F.3d at 42 (internal quotation marks,
brackets, and citations omitted). Thus, a party's adequacy
depends on the party having sufficient "knowledge to be able to
protect the interests of the class." Baffa v. Donaldson, Lufkin
& Jenrette Sec. Corp., 222 F.3d 52, 62 (2d Cir. 2000). Such
knowledge includes whether the party "understood that the
[particular] investments were the subject of this litigation"
and that the party "understood that [it] and others had
sustained a loss due to the alleged fraud." Id. "[I]n complex
securities litigation, named plaintiffs are not expected to
possess expert knowledge of the details of the case and must be
expected to rely on expert counsel." Lapin v. Goldman Sachs &
Co., 254 F.R.D. 168, 177 (S.D.N.Y. 2008)(quoting In re Omnicom

Group Inc. Sec. Litig., 2007 WL 1280640, at *6 (S.D.N.Y. Apr. 30, 2007)). "Far from showing [a party's] ignorance of the litigation or [its] inability to serve as class representative," a party's reliance on outside experts "demonstrates [its] ability to appreciate the limits of [its] knowledge and rely on those with the relevant expertise." Baffa, 222 F.3d at 62. The record reflects that PERSI has been involved throughout the litigation. See Exh. J, Pls.' Reply (ECF No. 248-11). PERSI has met with its counsel several dozen times to discuss the case, see id. at 8 of 15, Ln. 8-15, understands its role in filing the operative complaint, see id. at 9 of 15, Ln. 15-20, reviewed the amended complaint before it was filed, see id. at 10 of 15, Ln. 4, 6-7, knows the identities of the defendants, see id. at 11 of 15, Ln. 14-17, reviewed the motion for class certification before it was filed, see id. at 13 of 15, Ln. 8-9, and understands the class definition and the class period, see id. at 14 of 15, Ln. 3-11. These facts establish that PERSI is sufficiently involved and has the knowledge necessary to protect the interests of the class.

With respect to coordination between Erste and PERSI, "courts regularly require proposed lead plaintiff 'groups' to demonstrate their ability to function as a cohesive and independent unit to protect the interests of the class." In re Petrobras Sec. Litig., 104 F.Supp.3d 618, 622 (S.D.N.Y. 2015).

"Relevant considerations include whether the group's members have a pre-existing relationship, whether they have cooperated effectively thus far, and whether they have a coherent plan for dividing responsibilities, resolving conflicts, and managing the litigation." Id. A primary purpose of this requirement is to determine "whether the grouping operates to circumvent the purposes of the PSLRA." Galmi v. Teva Pharms. Indus. Ltd., 302 F.Supp.3d 485, 493 (D. Conn. 2017). See Petrobras, 104 F.Supp.3d at 622 ("A plaintiff group will generally be rejected if the court determines that it is 'simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as "lead plaintiff."'" (quoting In re Razorfish, Inc. Sec. Litig., 143 F.Supp.2d 304, 308 (S.D.N.Y. 2001))). No such concern is present here. "Erste-Sparinvest and PERSI have demonstrated not only that they have the largest combined loss in connection with the transactions in Alexion Pharmaceuticals, Inc.'s ('Alexion') securities during the Class Period, but also that each, standing alone, incurred larger losses than any other competing lead plaintiff movant." Order re Mots. for Appt. of Lead Pl. and Approval of Selection of Counsel (ECF No. 43) at 1-2. While Erste and PERSI had no pre-existing relationship prior to their appointment as lead plaintiffs, Erste and PERSI are actively involved in managing the litigation through their attorneys and

are committed to addressing issues as they arise. See Exh. 8, Defs.' Opp. (ECF No. 237-9) at 16 of 23, Ln. 18 to 17 of 23, Ln. 2. The defendants have not shown that there is any issue regarding the joint management of this litigation that raises a serious question about the lead plaintiffs' ability to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

**B.    Rule 23(b)(3)**

Erste and PERSI have shown "that the questions of law or fact common to class members predominate over any questions affecting only individual matters, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Id. R. 23(b)(3).

**1.    <u>Predominance</u>**

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011) ("Halliburton I") (quoting Fed. R. Civ. P. 23(b)(3)). A claim "based on violations of § 10(b) and Rule 10b-5" has the following elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and

(6) loss causation." Id. at 809-10 (quoting Matrixx Initiaves, Inc. v. Siracusano, 563 U.S. 27, 37-38 (2011)). Similar elements apply to claims alleging a deceptive scheme under Rules 10b-5(a) and 10b-5(c). See U.S. Sec. & Exch. Comm'n v. Winemaster, 529 F.Supp.3d 880, 917-18 (N.D. Ill. 2021). It is uncontested that the plaintiffs have shown predominance as to alleged material misrepresentations and omissions by the defendants, scienter, the connection between the misrepresentations and omissions and the purchase or sale of Alexion shares, and economic loss. However, the defendants do contest the plaintiffs' ability to "establish reliance on a classwide basis . . . as to the vast majority of the alleged misrepresentations at issue." Defs.' Opp. at 1. They also argue that the "plaintiffs have failed to establish predominance with respect to damages." Id. at 13.

### a. **Classwide Reliance**

Plaintiffs may "satisfy the reliance element of the Rule 10b-5 cause of action by invoking a presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases stock at the market price may be considered to have done so in reliance on the misrepresentation." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 283-84 (2011) ("Halliburton II"). See Basic Inc. v. Levinson, 485 U.S. 224, 244-48 (1988). In order to invoke the Basic presumption, "plaintiffs in a

securities fraud class action [must] establish certain prerequisites--namely, that defendants' misstatements were publicly known, their shares traded in an efficient market, and plaintiffs purchased the shares at the market price after the misstatements were made but before the truth was revealed." <u>Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.</u>, 879 F.3d 474, 481 (2d Cir. 2018) ("<u>ATRS I</u>"). This presumption is rebuttable. However, because "class certification is not the proper procedural stage for the Court to determine, as a matter of law, whether the relevant disclosures were corrective," <u>Erica P. John Fund, Inc. v. Halliburton Co.</u>, 309 F.R.D. 251, 260 (N.D. Tex. 2015) ("<u>Halliburton III</u>"), the question at the class certification stage is whether there is a lack of price impact associated with the disclosures, <u>see id.</u> at 256 (noting that <u>Halliburton II</u> permits a defendant to "introduce evidence of a lack of price impact at the class certification stage to show the absence of predominance"). To rebut the <u>Basic</u> presumption once it has been invoked, defendants must show that "the alleged misstatements caused <u>no</u> price impact whatsoever," <u>City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ</u>, 322 F.Supp.3d 676, 687 (D. Md. 2018), and the defendants must make this showing as to all of the alleged corrective disclosures, <u>see Monroe Cty. Employees' Ret. Sys. v. S. Co.</u>, 332 F.R.D. 370, 395-96 (N.D. Ga. 2019). "[T]he defendant

bears the burden of persuasion to prove a lack of price impact," and "the defendant must carry that burden by a preponderance of the evidence." Goldman Sachs Grp., Inc. v. Ark. Tchrs. Ret. Sys., 141 S.Ct. 1951, 1963 (2021). Although defendants may attempt to show lack of price impact by a statistically-based event study, courts have cautioned that "the failure of an event study to disprove the null hypothesis with respect to an event does not prove that the event had no impact on the stock price." Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC, 310 F.R.D. 69, 95 (S.D.N.Y. 2015). Thus, once the Basic presumption is invoked, "the defendant is burdened with the daunting task of proving that the publicly known statement had no price impact." Aranaz v. Catalyst Pharm. Partners Inc., 302 F.R.D. 657, 673 (S.D. Fla. 2014).

It is uncontested that the "defendants' misstatements were publicly known, their shares traded in an efficient market, and plaintiffs purchased the shares at the market price after the misstatements were made but before the truth was revealed." ATRS I, 879 F.3d at 481. Thus, the Basic presumption of reliance applies. The defendants attempt to rebut this presumption by pointing to a lack of price impact with respect to several of the alleged corrective disclosures. Specifically, the defendants argue that market efficiency itself shows an absence of price impact for at least several of the alleged corrective

disclosures because "prices in an efficient market fully incorporate value-relevant news in a matter of minutes, and certainly within a trading day." Defs.' Opp. at 16. See Defs.' Surreply (ECF No. 251) at 5 (arguing there is no evidence to support a conclusion that "in an efficient market the price impact of new, value-relevant information can be delayed by more than a day"). The defendants contend that there is "undisputed evidence that there was no statistically significant price impact" for disclosures on the following dates: November 4, 2016; November 9-10, 2016; March 6, 2017; and May 8, 2017. Defs.' Opp. at 15. The defendants also contend that "price changes more than a day after an alleged corrective disclosure are insufficient to show significant price impact," which relates to "alleged stock drops on November 7, 2016; November 11, 2016; December 13, 2016; March 7, 2016; and May 25-26, 2017." Id. at 17. Nevertheless, the defendants do not contest the plaintiffs' identification of statistically significant price impacts on December 12, 2016; May 23, 2017; and May 24, 2017. See id. at 14-15.

The defendants have failed to prove an absence of price impact. As a preliminary matter, the defendants have conceded that there were statistically significant decreases in the price of Alexion shares with respect to at least some of the alleged corrective disclosures, i.e., on December 12, 2016; May 23,

2017; and May 24, 2017. See Exh. 13, Defs.' Opp. (ECF No. 237-14), at 86 of 211 (showing statistically significant abnormal returns on these "Expected Impact Date[s]"). "This concession dooms Defendants' attempt to rebut the presumption of reliance because the inquiry is whether Defendants have proven a complete lack of price impact during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." Monroe Cty. Employees' Ret. Sys. v. Southern Co., 332 F.R.D. 370, 395 (N.D. Ga. 2019). Although the defendants seek to exclude the other dates from the class period, see Defs.' Opp. at 14-15, "numerous courts addressing class certification have refused to shorten class periods by dismissing subsequent corrective disclosures where some but not all of the stock price declines following the alleged corrective disclosures were statistically significant," Southern Co., 332 F.R.D. at 395. Rather, "the question of what caused the stock price to decline is an ultimate merits question for which plaintiffs bear the burden at trial, not at class certification." Id. at 395-96.

This point is significant for an additional reason: the defendants have also not contested that every alleged corrective disclosure was accompanied by an abnormal return, even if the difference was not statistically significant. See Exh. 13,

Defs.' Opp. (ECF No. 237-14), at 86 of 211. The defendants'
expert limited himself to "us[ing] the results of Mr. Coffman's
regression analysis to evaluate the statistical significance of
Alexion common stock abnormal returns" and did not "endeavor[]
to independently confirm its results." Id. at 23 of 211 n.56.
However, as noted above, lack of statistical significance does
not prove an absence of price impact because "the failure of an
event study to disprove the null hypothesis with respect to an
event does not prove that the event had no impact on the stock
price." Barclays, 310 F.R.D. at 95. The defendants' expert
reviewed residual returns around alleged corrective disclosure
days for statistical significance. Based on that review, the
defendants cannot dispute that Alexion underperformed the
industry on every date listed except May 26, 2017, when both
Alexion and the industry underperformed the market, leading to
an abnormal return. See Exh. 13, Defs.' Opp., at 86 of 211. Nor
can the defendants dispute that Alexion underperformed the
market on every date listed except November 4, 2016, when
Alexion nevertheless underperformed the industry. See id. These
abnormal returns do not conclusively demonstrate that the
alleged disclosures affected the stock price, but the court
cannot conclude, from the fact that the negative returns are not
statistically significant, that there was "a complete lack of
price impact." In re Goldman Sachs Grp., Inc. Sec. Litig., 579

F.Supp.3d 520, 526 (S.D.N.Y. 2021). See <u>Struogo v. Tivity
Health, Inc.</u>, ___ F.Supp.3d ____, 2022 WL 2037966, at *7
(M.D. Tenn. June 7, 2022) ("To sever the link in this case,
Tivity must show a complete lack of price impact."); <u>Southern
Co.</u>, 332 F.R.D. at 395 (same). See also <u>Waggoner v. Barclays
PLC</u>, 875 F.3d 79, 104 (2d Cir. 2017) (permitting plaintiffs to
show price impact through "statements that merely maintain
inflation already extant in a company's stock price, but do not
add to that inflation" (quoting <u>In re Vivendi, S.A. Sec. Litig.</u>,
838 F.3d 223, 256 (2d Cir. 2016))); Am. Compl. ¶ 231 (alleging
that defendants' "statements artificially inflated or
artificially maintained the price of Alexion's publicly traded
common stock"); <u>id.</u> ¶ 342 ("[A]ll purchasers of Alexion common
stock during the Class Period suffered similar injury through
their purchase of Alexion common stock at artificially inflated
prices."). For these reasons, the defendants have not met their
burden to rebut the <u>Basic</u> presumption.

### b.  <u>Classwide Damages</u>

"[A] model for determining classwide damages relied upon
to certify a class under Rule 23(b)(3) must actually measure
damages that result from the class's asserted theory of injury."
<u>Roach v. T.L. Cannon Corp.</u>, 778 F.3d 401, 407 (2d Cir. 2015).
"[F]or purposes of Rule 23, courts must conduct a rigorous
analysis to determine whether that is so." <u>Comcast Corp. v.</u>

Behrend, 569 U.S. 27, 35 (2013) (internal quotation marks and citations omitted). Although a court must "evaluate whether the individualized damages questions predominate over the common questions of liability," Roach, 778 F.3d at 409, the Supreme Court's decision in Comcast "did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations," i.e., where "damages are not measurable on a classwide basis," id. at 408.

The plaintiffs have met their burden under Comcast. The plaintiffs' theory of the case is that the defendants' alleged misrepresentations and omissions "inflated the value of [Alexion] stock, that this inflation was removed following a series of corrective disclosures, and that Plaintiffs suffered damages as a result." Pirnik v. Fiat Chrysler Automobiles, N.V., 327 F.R.D. 38, 47 (S.D.N.Y. 2018). The plaintiffs' damages model is based on an "out-of-pocket," or event study, methodology:

> [This model] involves determining the change in a security's price caused by a corrective disclosure by isolating price movements specific to [Alexion] through an event study; analyzing, for each day of the Class Period, the amount of inflation in the stock price due to the alleged fraud and then mechanically calculating damages on an individual basis by analyzing a class member's actual trading activity.

Id. (internal quotation marks, citations, and brackets omitted). As required by Comcast, this methodology is consistent with the plaintiff's theory of the case. See Pirnik, 327 F.R.D. at 47

(discussing the Second Circuit's holding in Waggoner "that a damages model satisfied Comcast where the plaintiffs alleged harm when defendants' share price significantly dropped after statements about defendants' business practices were shown to be false and plaintiffs' damages model measured that harm by examining the drop in share price after corrective disclosures").

The defendants here raise the same kinds of objections to the plaintiffs' damages model as were raised in Pirnik. Compare id. at 47 ("Defendants contend that Dr. Nye's damages model (1) fails to account for the possibility of variation in inflation over time; (2) rests on flawed assumptions, such as that FCA could have disclosed the truth of its alleged misstatements at the beginning of the class period in a manner equivalent to supposed corrective disclosures; and (3) does not control for confounding information." (internal quotation marks and citations omitted)) with Defs.' Opp. at 23 (arguing that expert fails to account for "how inflation changes over the class period"); id. at 24 (arguing that expert fails to account for effect of information which "could not have been disclosed before the relevant events occurred"); id. at 21 (arguing that expert fails to control for "confounding information"). As to the first point, the Second Circuit has rejected the "Defendants' argument that class certification was improper

under Comcast because the Plaintiffs' damages model failed to account for variations in inflation over time." Waggoner, 875 F.3d at 106. As to the second and third points, these "challenges go to the question of loss causation (that is, whether Plaintiffs' damages were caused by the alleged fraud alone or by other market factors)." Pirnik, 327 F.R.D. at 47. But loss causation "need not be adjudicated before a class is certified." Amgen, 568 U.S. at 475.

The defendants argue that "Plaintiffs' motion also should be denied because they have not satisfied their obligation to demonstrate that damages can be determined on a classwide basis," and they maintain that "[t]he Second Circuit has emphasized the importance of establishing that damages can be determined on a classwide basis before certifying a class in a securities action." Defs.' Opp. at 20. However, the Second Circuit has made clear that while "damages questions should be considered at the certification stage when weighing predominance issues," Roach, 778 F.3d at 408, "Comcast . . . did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis," id. at 407. See id. at 409 (vacating district court order denying class certification where order was based on conclusion that "damages were not capable of measurement on a classwide basis"). The plaintiffs' damages model, the "out-of-pocket" methodology, is a

recognized measurement of damages in Section 10(b) securities cases. See e.g. In re Virtus Inv. Partners, Inc. Sec. Litig., 2017 WL 2062985 at *4 (S.D.N.Y. 2017); Di Donato v. Insys Therapeutics, Inc., 333 F.R.D. 427,447 (D.Ariz. 2019); Howard v. Liquidity Servs. Inc., 322 F.R.D. 103, 139 (D.D.C. 2017); Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co., 2018 WL1535156 at *3 (N.D.Ill. 2018); Police Ret. Sys. St. Louis v. Granite Constr. Inc., 2021 WL229310 at *6-7 (N.D.Cal. 2021); KBC Asset Mgmt. NV v. 3D Sys. Corp., 2017 WL4297450 at *7 (D.S.C. 2017); Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc., 2016 WL4098741 at *11 (D.Minn. 2016).

### 2. **Superiority**

In order to certify the class, the court must also find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 identifies four factors pertinent to this finding: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id. Courts "have regularly held that securities class actions are presumed to be

superior to individual suits." <u>Fort Worth Employees' Ret. Fund</u> <u>v. J.P. Morgan Chase & Co.</u>, 301 F.R.D. 116, 142 (S.D.N.Y. 2014). Given the large number of purchasers of Alexion shares, the complexity of this litigation, the desirability of concentrating litigation in this forum, and the lack of unique difficulties in managing this action, the plaintiffs have shown that the superiority requirement is satisfied.

### 3. Ascertainability

Finally, the court must also ensure "that the members of a proposed class [are] readily identifiable." <u>In re Petrobras Sec.</u> <u>Litig.</u>, 862 F.3d 250, 264 (2d Cir. 2017) (quoting <u>Sandusky</u> <u>Wellness Ctr., LLC v. Medtox Sci., Inc.</u>, 821 F.3d 992, 995 (8th Cir. 2016)). To be ascertainable, "a class [must] be defined using objective criteria that establish a membership with definite boundaries." <u>Id.</u> The plaintiffs have proposed a class that includes "[a]ll persons or entities who purchased or otherwise acquired the publicly traded common stock of Alexion Pharmaceuticals, Inc. from January 30, 2014 to May 26, 2017, inclusive . . . and who were damaged thereby." Pls.' Mem. at 3. Because the class members can be readily identified from the defendants' books and records, the plaintiffs have shown that the ascertainability requirement is satisfied.

### C. Rule 23(g)

Rule 23 provides that "a court that certifies a class must

appoint class counsel." Fed. R. Civ. P. 23(g)(1). On the basis of their work in this litigation and the submissions filed with the plaintiffs' motion for class certification, the court concludes that Motley Rice and Labaton Sucharow satisfy the requirements of Rule 23(g) and appoints the firms as co-class counsel.

## IV. CONCLUSION

For the reasons set forth above, Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co-Class Counsel (ECF No. 198) is hereby GRANTED.

The following class is certified pursuant to Rules 23(a) and 23(b)(3):

> All persons or entities who purchased or otherwise acquired the publicly traded common stock of Alexion Pharmaceuticals, Inc. from January 30, 2014 to May 26, 2017, inclusive (the "Class Period") and who were damaged thereby (the "Class"), excluding Defendants; members of the immediate families of the Individual Defendants; Alexion's subsidiaries and affiliates; any person who is or was an officer or director of Alexion or any of the Company's subsidiaries or affiliates during the Class Period; any entity in which any Defendant has a controlling interest; and the legal representatives, heirs, successors, and assigns of any such excluded person or entity.

Lead Plaintiffs Erste Asset Management GmbH and the Public Employee Retirement System of Idaho are each appointed Class Representatives of the Class pursuant to Rules 23(a) and 23(b)(3).

Lead Counsel Motley Rice LLC and Labaton Sucharow LLP are

appointed as Co-Class Counsel for the Class pursuant to Rule 23(g).

It is so ordered.

Dated this 13th day of April 2023, at Hartford, Connecticut.

_____

/s/AWT

Alvin W. Thompson

United States District Judge

EFILE

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:16–cv–02127–AWT

| | |
|---|---|
| Boston Retirement System v. Alexion Pharmaceuticals Inc et al | Date Filed: 12/29/2016 |
| Assigned to: Judge Alvin W. Thompson | Jury Demand: Plaintiff |
| Cause: 28:1331 Fed. Question: Securities Violation | Nature of Suit: 850 |
| | Securities/Commodities |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Boston Retirement System**
*Individually and On Behalf of All Others*
*Similarly Situated*

represented by **David A. Slossberg**
Hurwitz Sagarin Slossberg & Knuff, LLC
147 N. Broad Street
Milford, CT 06460
203–877–8000
Fax: 203–878–9800
Email: dslossberg@hssklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Nichols**
Hurwitz Sagarin Slossberg & Knuff LLC
147 North Broad St., PO Box 112
Milford, CT 06460–0112
203–877–8000
Fax: 203–878–9800
Email: jnichols@hssklaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Alexion Pharmaceuticals Inc**

represented by **Audra J. Soloway**
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP–NY
1285 Avenue of the Americas
New York, NY 10019–6064
212–373–3289
Fax: 212–492–0289
Email: asoloway@paulweiss.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel J. Kramer**
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP–NY
1285 Avenue of the Americas
New York, NY 10019–6064
212–373–3020
Fax: 212–492–0020
Email: dkramer@paulweiss.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane B. O'Brien**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
2001 K Street, NW

Washington, DC 20006–1047
202–223–7300
Email: jobrien@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maxwell Kosman**
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP–NY
1285 Avenue of the Americas
New York, NY 10019–6064
212–373–3269
Fax: 212–492–0269
Email: mkosman@paulweiss.com
*TERMINATED: 01/29/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Ring**
Wiggin and Dana LLP
265 Church St
New Haven, CT 06510
203–498–4377
Email: dring@wiggin.com
*ATTORNEY TO BE NOTICED*

**Jonathan Hurwitz**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019–6064
212–373–3000
Email: jhurwitz@paulweiss.com
*ATTORNEY TO BE NOTICED*

**Robyn E. Gallagher**
Wiggin & Dana–Htfd
20 Church St.
Hartford, CT 06103
860–297–3700
Fax: 860–525–9380
Email: rgallagher@wiggin.com
*ATTORNEY TO BE NOTICED*

**Tamar Holoshitz**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019–6064
212–373–3000
Email: tholoshitz@paulweiss.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Leonard Bell**                    represented by    **Audra J. Soloway**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Daniel J. Kramer**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane B. O'Brien**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maxwell Kosman**
(See above for address)
*TERMINATED: 01/29/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Ring**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Hurwitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robyn E. Gallagher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tamar Holoshitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David L. Hallal**                    represented by   **Audra J. Soloway**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel J. Kramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane B. O'Brien**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maxwell Kosman**
(See above for address)
*TERMINATED: 01/29/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Ring**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Hurwitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robyn E. Gallagher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tamar Holoshitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Vikas Sinha**                                      represented by  **Audra J. Soloway**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel J. Kramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane B. O'Brien**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maxwell Kosman**
(See above for address)
*TERMINATED: 01/29/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Ring**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Hurwitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robyn E. Gallagher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tamar Holoshitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Brennan**                                    represented by  **David A. Ring**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robyn E. Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Audra J. Soloway**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                                  **Daniel J. Kramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David J. Anderson**              represented by   **David A. Ring**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                                  **Robyn E. Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                                  **Audra J. Soloway**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                                  **Daniel J. Kramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ludwig N. Hantson**             represented by   **Robyn E. Gallagher**
*TERMINATED: 06/02/2019*                      (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                                  **Audra J. Soloway**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                                  **Daniel J. Kramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carsten Thiel**                     represented by   **David A. Ring**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                                  **Robyn E. Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                                  **Audra J. Soloway**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                                  **Daniel J. Kramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ludwig Hantson**                   represented by   **David A. Ring**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robyn E. Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Steamship Trade**                    represented by    **Joseph P. Guglielmo**
**Association–International**                              ScottScott, Attorneys at Law, LLP
**Longshoremen's Association Pension**                    The Helmsley Building
**Fund**                                                  230 Park Avenue, 17th Floor
                                                          New York, NY 10169
                                                          212–223–6444
                                                          Fax: 212-223-6334
                                                          Email: jguglielmo@scott–scott.com
                                                          *ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Gwinnett County Public Employees**    represented by    **Sabrina E. Tirabassi**
**Retirement System**                                     Robbins Gueller Rudman & Dowd,
                                                          LLP–FL
                                                          120 East Palmetto Park Road
                                                          Suite 500
                                                          Boca Raton, FL 33432
                                                          561–750–3000
                                                          Fax: 561–750–3364
                                                          Email: stirabassi@rgrdlaw.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jonathan P. Whitcomb**
                                                          Diserio Martin O'Connor & Castiglioni
                                                          LLP
                                                          1010 Washington Boulevard
                                                          Suite 800
                                                          Stamford, CT 06901
                                                          203–358–0800
                                                          Fax: 203–348–2321
                                                          Email: jwhitcomb@dmoc.com
                                                          *ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Erste–Sparinvest**                    represented by    **Alfred L. Fatale , III.**
**Kapitalanlagegesellschaft mbH**                         Labaton Sucharow LLP–NY
                                                          140 Broadway, 33rd Floor
                                                          New York, NY 10005
                                                          212–907–0700
                                                          Fax: 212-818–0477
                                                          Email: afatale@labaton.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Andrew P. Arnold**
                                                          Motley Rice, LLC–SC
                                                          28 Bridgeside Blvd.
                                                          Mt. Pleasant, SC
                                                          843–216–9000
                                                          Fax: 843–216–9459
                                                          Email: aarnold@motleyrice.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

**Christopher J. Keller**
Labaton Sucharow LLP–NY
140 Broadway, 33rd Floor
New York, NY 10005
212–907–0700
Fax: 212–818–0477
Email: ckeller@labaton.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Moriarty**
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843–216–9000
Email: cmoriarty@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Corban S. Rhodes**
DiCello Levitt Gutzler
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
646–933–1000
Email: crhodes@dicellolevitt.com
*TERMINATED: 03/16/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric J. Belfi**
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
212–907–0878
Fax: 212–818–0477
Email: ebelfi@labaton.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Francis P. McConville**
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
212–907–0650
Fax: 212–818–0477
Email: fmcconville@labaton.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregg S. Levin**
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843–216–9000
Email: glevin@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James T. Christie**

Labaton Sucharow LLP–NY
140 Broadway, 33rd Floor
New York, NY 10005
212–907–0700
Fax: 212–818–0477
Email: jchristie@labaton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M. Hughes**
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843–216–9000
Email: jhughes@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John J Esmay**
Bernstein Litowitz Berger & Grossmann
LLP
1251 Avenue of the Americas
10020
New York, NY 10020
212–554–1283
Email: John.Esmay@blbglaw.com
*TERMINATED: 02/10/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua C. Littlejohn**
Motley Rice, LLC–SC
28 Bridgeside Blvd.
Mt. Pleasant, SC
843–216–9000
Fax: 843–216–9450
Email: jlittlejohn@motleyrice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Margaret Schmidt**
Labaton Sucharow LLP
140 Broadway
Ste 34th Floor
New York, NY 10005
212–907–0700
Email: mschmidt@labaton.com
*TERMINATED: 10/28/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mathew P. Jasinski**
Motley Rice LLC
One Corporate Ctr., 17th Fl.
20 Church St.
Hartford, CT 06103
860–218–2725
Fax: 860–882–1682
Email: mjasinski@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meredith Weatherby**
Motley Rice LLC

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843–216–9167
Email: mweatherby@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael W. Stocker**
Labaton Sucharow LLP–NY
140 Broadway, 33rd Floor
New York, NY 10005
212–907–0700
Fax: 212–818–0477
Email: mstocker@labaton.com
*TERMINATED: 07/12/2018*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ross M. Kamhi**
Labaton Sucharow LLP–NY
140 Broadway, 33rd Floor
New York, NY 10005
212–907–0700
Fax: 212–818–0477
Email: rkamhi@labaton.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William S. Norton**
Motley Rice, LLC–SC
28 Bridgeside Blvd.
Mt. Pleasant, SC
843–216–9000
Fax: 843–216–9450
Email: bnorton@motleyrice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James W. Johnson**
Labaton Sucharow LLP–NY
140 Broadway, 33rd Floor
New York, NY 10005
212–907–0700
Fax: 212–818–0477
Email: JJohnson@labaton.com
*ATTORNEY TO BE NOTICED*

**Matthew J. Hrutkay**
Hrutkay Law PM
600 W. Broadway
Suite 700
92101
San Diego, CA 92101
858–868–0018
Email: matt.hrutkay@hrutkaylaw.com
*TERMINATED: 07/12/2018*
*ATTORNEY TO BE NOTICED*

**Michael H. Rogers**
Labaton Sucharow LLP–NY
140 Broadway, 33rd Floor
New York, NY 10005

212–907–0700
Fax: 212–818–0477
Email: mrogers@labaton.com
*ATTORNEY TO BE NOTICED*

**William H. Narwold**
Motley Rice LLC
One Corporate Ctr., 17th Fl.
20 Church St.
Hartford, CT 06103
860–882–1676
Fax: 860–882–1682
Email: bnarwold@motleyrice.com
*ATTORNEY TO BE NOTICED*

<u>**Movant**</u>

| | | |
|---|---|---|
| **Public Employee Retirement System of Idaho** | represented by | **Alfred L. Fatale , III.** |

**Alfred L. Fatale , III.**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew P. Arnold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher J. Keller**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Moriarty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Corban S. Rhodes**
(See above for address)
*TERMINATED: 03/16/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric J. Belfi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Francis P. McConville**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregg S. Levin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James T. Christie**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M. Hughes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John J Esmay**
(See above for address)
*TERMINATED: 02/10/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua C. Littlejohn**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Margaret Schmidt**
(See above for address)
*TERMINATED: 10/28/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mathew P. Jasinski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meredith Weatherby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael W. Stocker**
(See above for address)
*TERMINATED: 07/12/2018*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ross M. Kamhi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William S. Norton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James W. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew J. Hrutkay**
(See above for address)
*TERMINATED: 07/12/2018*
*ATTORNEY TO BE NOTICED*

**Michael H. Rogers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William H. Narwold**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**

**The Alger Funds**                    represented by  **Ari J. Hoffman**
Cohen & Wolf, P.C.
1115 Broad St., Po Box 1821
Bridgeport, CT 06604
203–368–0211
Fax: 203–394–9901
Email: ahoffman@cohenandwolf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jarett Sena**
Rolnick Kramer Sadighi LLP
1251 Avenue of the Americas
New York, NY 10020
212–597–2800
Email: jsena@rksllp.com
*TERMINATED: 08/31/2022*
*ATTORNEY TO BE NOTICED*

**Marc Kramer**
Rolnick Kramer Sadighi LLP
1251 Avenue of the Americas
New York, NY 10020
212–597–2800
Email: mkramer@rksllp.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Charles Schwab**                    represented by  **Ari J. Hoffman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David A. Ball**
Cohen & Wolf, P.C.
1115 Broad St., Po Box 1821
Bridgeport, CT 06604
203–368–0211
Email: dball@cohenandwolf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/29/2016 | 1 | COMPLAINT against All Defendants ( Filing fee $400 receipt number 0205–4247395.), filed by BOSTON RETIREMENT SYSTEM. (Attachments: # 1 CIVIL COVER SHEET)(Slossberg, David) (Entered: 12/29/2016) |
| 12/29/2016 |   | Request for Clerk to issue summons as to All Defendants. (Slossberg, David) (Entered: 12/29/2016) |
| 12/29/2016 | 2 | NOTICE by BOSTON RETIREMENT SYSTEM *Certification Pursuant to the Federal Securities Laws* (Slossberg, David) (Entered: 12/29/2016) |

| 12/29/2016 | | Judge Alvin W. Thompson added. (Walker, A) (Entered: 12/30/2016) |
|---|---|---|
| 12/29/2016 | 4 | Order on Pretrial Deadlines: Motions to Dismiss due on 3/29/2017. Amended Pleadings due by 2/27/2017 Discovery due by 6/30/2017 Dispositive Motions due by 7/30/2017<br>Signed by Clerk on 12/29/2016.(Enderlin, M.) (Entered: 12/30/2016) |
| 12/29/2016 | 5 | ELECTRONIC FILING ORDER – PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER<br>Signed by Judge Alvin W. Thompson on 12/29/2016.(Enderlin, M.) (Entered: 12/30/2016) |
| 12/29/2016 | 6 | STANDING PROTECTIVE ORDER<br>Signed by Judge Alvin W. Thompson on 12/29/2016.(Enderlin, M.) (Entered: 12/30/2016) |
| 12/30/2016 | 3 | NOTICE of Appearance by Jeffrey P. Nichols on behalf of Boston Retirement System (Nichols, Jeffrey) (Entered: 12/30/2016) |
| 12/30/2016 | 7 | NOTICE TO COUNSEL: Counsel initiating or removing this action are responsible for serving all parties with attached documents and copies of 2 Notice (Other) filed by Boston Retirement System, 4 Order on Pretrial Deadlines, 5 Electronic Filing Order, 1 Complaint filed by Boston Retirement System, 3 Notice of Appearance filed by Boston Retirement System, 6 Protective Order<br>Signed by Clerk on 12/30/2016.(Enderlin, M.) (Entered: 12/30/2016) |
| 12/30/2016 | 8 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to * All Defendants * with answer to complaint due within *21* days. Attorney *David A. Slossberg* *Hurwitz Sagarin Slossberg & Knuff LLC* *147 North Broad St., PO Box 112* *Milford, CT 06460–0112*. (Enderlin, M.) (Entered: 12/30/2016) |
| 01/17/2017 | 9 | MOTION to Appoint Counsel *and Appoint Lead Plaintiff* by Steamship Trade Association–International Longshoremen's Association Pension Fund. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Joseph P. Guglielmo, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Text of Proposed Order)(Guglielmo, Joseph) (Entered: 01/17/2017) |
| 01/17/2017 | 10 | MOTION to Appoint Counsel *and Lead Plaintiff* by Gwinnett County Public Employees Retirement System. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Declaration of Jonathan P. Whitcomb, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E)(Whitcomb, Jonathan) (Entered: 01/17/2017) |
| 01/17/2017 | 11 | MOTION to Appoint Counsel *and Appoint Lead Plaintiff* by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Proposed Order)(Narwold, William) (Entered: 01/17/2017) |
| 01/17/2017 | 12 | Memorandum in Support re 11 MOTION to Appoint Counsel *and Appoint Lead Plaintiff* filed by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 01/17/2017) |
| 01/17/2017 | 13 | AFFIDAVIT re 11 MOTION to Appoint Counsel *and Appoint Lead Plaintiff* Signed By William H. Narwold filed by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Certifications, # 2 Exhibit B – Loss Charts, # 3 Exhibit C – Joint Declaration, # 4 Exhibit D – Notice, # 5 Exhibit E – Motley Rice Firm Resume, # 6 Exhibit F – Labaton Sucharow Firm Resume)(Narwold, William) (Entered: 01/17/2017) |
| 01/17/2017 | 14 | Corporate Disclosure Statement by Erste–Sparinvest Kapitalanlagegesellschaft mbH identifying Corporate Parent Erste Asset Management GmbH, Corporate Parent Erste Bank Beteiligungen GmbH, Corporate Parent Erste Group Bank AG for Erste–Sparinvest Kapitalanlagegesellschaft mbH. (Narwold, William) (Entered: 01/17/2017) |
| 01/30/2017 | 15 | MOTION for Attorney(s) Sabrina E. Tirabassi to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4280678) by Gwinnett County Public Employees Retirement System. (Attachments: # 1 Affidavit)(Whitcomb, Jonathan) (Entered: |

| | | |
|---|---|---|
| | | 01/30/2017) |
| 01/31/2017 | 16 | ORDER granting 15 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 4/1/2017. Signed by Clerk on 1/31/2017. (Enderlin, M.) (Entered: 01/31/2017) |
| 02/02/2017 | 17 | MOTION for Attorney(s) Christopher J. Keller to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4285004) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 02/02/2017) |
| 02/02/2017 | 18 | MOTION for Attorney(s) Eric J. Belfi to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4285044) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 02/02/2017) |
| 02/02/2017 | 19 | MOTION for Attorney(s) Francis P. McConville to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4285063) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 02/02/2017) |
| 02/03/2017 | 20 | ORDER granting 17 Motion to Appear Pro Hac Vice Attorney Christopher J. Keller for Erste−Sparinvest Kapitalanlagegesellschaft mbH,Christopher J. Keller for Public Employee Retirement System of Idaho added. Certificate of Good Standing due by 4/4/2017. Signed by Clerk on 2/3/2017. (Enderlin, M.) (Entered: 02/03/2017) |
| 02/03/2017 | 21 | ORDER granting 18 Motion to Appear Pro Hac Vice Attorney Eric J. Belfi for Erste−Sparinvest Kapitalanlagegesellschaft mbH,Eric J. Belfi for Public Employee Retirement System of Idaho added. Certificate of Good Standing due by 4/4/2017. Signed by Clerk on 2/3/2017. (Enderlin, M.) Modified to correct Attorney association on 2/7/2017 (Enderlin, M.). (Entered: 02/03/2017) |
| 02/03/2017 | 22 | ORDER granting 19 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 4/4/2017. Signed by Clerk on 2/3/2017. (Enderlin, M.) (Entered: 02/03/2017) |
| 02/03/2017 | 23 | NOTICE by Steamship Trade Association−International Longshoremen's Association Pension Fund re 9 MOTION to Appoint Counsel *and Appoint Lead Plaintiff* , *Notice of Withdrawal of Motion to Appoint Counsel and Appoint Lead Plaintiff* (Guglielmo, Joseph) (Entered: 02/03/2017) |
| 02/06/2017 | 24 | CERTIFICATE OF GOOD STANDING re 15 MOTION for Attorney(s) Sabrina E. Tirabassi to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4280678) by Gwinnett County Public Employees Retirement System. (Tirabassi, Sabrina) (Entered: 02/06/2017) |
| 02/06/2017 | 25 | CERTIFICATE OF GOOD STANDING re 17 MOTION for Attorney(s) Christopher J. Keller to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4285004) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Keller, Christopher) (Entered: 02/06/2017) |
| 02/06/2017 | 26 | CERTIFICATE OF GOOD STANDING re 19 MOTION for Attorney(s) Francis P. McConville to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4285063) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (McConville, Francis) (Entered: 02/06/2017) |
| 02/07/2017 | 27 | NOTICE of Appearance by David A. Ring on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (Ring, David) (Entered: 02/07/2017) |
| 02/07/2017 | 28 | MOTION for Attorney(s) Daniel J. Kramer, Audra J. Soloway, Maxwell Kosman to be Admitted Pro Hac Vice (paid $225 PHV fee; receipt number 0205−4290035) by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Ring, David) (Entered: 02/07/2017) |
| 02/07/2017 | 29 | Corporate Disclosure Statement by Alexion Pharmaceuticals Inc. (Ring, David) (Entered: 02/07/2017) |
| 02/07/2017 | 30 | NOTICE by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha re 11 MOTION to Appoint Counsel *and Appoint Lead Plaintiff*, 10 MOTION to Appoint Counsel *and Appoint Lead Plaintiff*, 13 Affidavit, 9 MOTION to Appoint Counsel *and Appoint Lead Plaintiff*, 12 Memorandum in Support of Motion *[Defendants' Notice* |

| | | |
|---|---|---|
| | | *Related to Motions for Appointment of Lead Plaintiff and Lead Counsel]* (Ring, David) (Entered: 02/07/2017) |
| 02/07/2017 | | Docket Entry Correction re 21 Order on Motion for Admission Pro Hac Vice. Corrected Attorney association. (Enderlin, M.) (Entered: 02/07/2017) |
| 02/07/2017 | 31 | Memorandum in Opposition re 11 MOTION to Appoint Counsel *and Appoint Lead Plaintiff*, 9 MOTION to Appoint Counsel *and Appoint Lead Plaintiff* filed by Gwinnett County Public Employees Retirement System. (Whitcomb, Jonathan) (Entered: 02/07/2017) |
| 02/07/2017 | 32 | Memorandum in Opposition re 10 MOTION to Appoint Counsel *and Lead Plaintiff*, 9 MOTION to Appoint Counsel *and Appoint Lead Plaintiff* filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 02/07/2017) |
| 02/08/2017 | 33 | ORDER granting 28 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 4/9/2017. Signed by Clerk on 2/8/2017. (Enderlin, M.) Modified to edit docket text on 2/8/2017 (Enderlin, M.). (Entered: 02/08/2017) |
| 02/10/2017 | 34 | CERTIFICATE OF GOOD STANDING re 18 MOTION for Attorney(s) Eric J. Belfi to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4285044) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Belfi, Eric) (Entered: 02/10/2017) |
| 02/16/2017 | 35 | NOTICE of Appearance by Daniel J. Kramer on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (Kramer, Daniel) (Entered: 02/16/2017) |
| 02/16/2017 | 36 | NOTICE of Appearance by Audra J. Soloway on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (Soloway, Audra) (Entered: 02/16/2017) |
| 02/16/2017 | 37 | NOTICE of Appearance by Maxwell Kosman on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (Kosman, Maxwell) (Entered: 02/16/2017) |
| 02/21/2017 | 38 | REPLY to Response to 10 MOTION to Appoint Counsel *and Lead Plaintiff* filed by Gwinnett County Public Employees Retirement System. (Whitcomb, Jonathan) (Entered: 02/21/2017) |
| 02/21/2017 | 39 | REPLY to Response to 11 MOTION to Appoint Counsel *and Appoint Lead Plaintiff* filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 02/21/2017) |
| 03/03/2017 | 40 | CERTIFICATE OF GOOD STANDING re 28 MOTION for Attorney(s) Daniel J. Kramer, Audra J. Soloway, Maxwell Kosman to be Admitted Pro Hac Vice (paid $225 PHV fee; receipt number 0205−4290035) by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Kramer, Daniel) (Entered: 03/03/2017) |
| 03/03/2017 | 41 | CERTIFICATE OF GOOD STANDING re 28 MOTION for Attorney(s) Daniel J. Kramer, Audra J. Soloway, Maxwell Kosman to be Admitted Pro Hac Vice (paid $225 PHV fee; receipt number 0205−4290035) by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Soloway, Audra) (Entered: 03/03/2017) |
| 03/03/2017 | 42 | CERTIFICATE OF GOOD STANDING re 28 MOTION for Attorney(s) Daniel J. Kramer, Audra J. Soloway, Maxwell Kosman to be Admitted Pro Hac Vice (paid $225 PHV fee; receipt number 0205−4290035) by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Kosman, Maxwell) (Entered: 03/03/2017) |
| 04/12/2017 | 43 | ORDER: For the reasons set forth in the attached document, Erste−Sparinvest and PERSI's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. No. 11 ) is hereby GRANTED; the Motion of Gwinnett County for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. No. 10 ) is hereby DENIED; and Movant Steamship Trade Association−International Longshoremen's Association Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. No. 9 ) is hereby DENIED as moot. The court will enter an order appointing Lead Plaintiff and approving Lead Counsel. It is so |

| | | |
|---|---|---|
| | | ordered. Signed by Judge Alvin W. Thompson on 4/12/17. (Rafferty, M.) (Entered: 04/12/2017) |
| 04/12/2017 | 44 | ORDER: As set forth in the attached document, Erste–Sparinvest and PERSI are APPOINTED as Lead Plaintiff in the action, and Motley Rice LLC and Labaton Sucharow LLP are APPOINTED to serve as Lead Counsel for the Class. It is so ordered. Signed by Judge Alvin W. Thompson on 4/12/17. (Rafferty, M.) (Entered: 04/12/2017) |
| 05/05/2017 | 45 | Joint STIPULATION *and [Proposed] Order* by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Soloway, Audra) (Entered: 05/05/2017) |
| 06/21/2017 | 46 | MOTION for Attorney(s) Andrew P. Arnold to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4443870) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Affidavit of Andrew P. Arnold)(Narwold, William) (Entered: 06/21/2017) |
| 06/21/2017 | 47 | MOTION for Attorney(s) William S. Norton to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4443895) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Affidavit of William S. Norton)(Narwold, William) (Entered: 06/21/2017) |
| 06/21/2017 | 48 | MOTION for Attorney(s) Joshua C. Littlejohn to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4443917) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Affidavit of Joshua C. Littlejohn)(Narwold, William) (Entered: 06/21/2017) |
| 06/22/2017 | 49 | ORDER granting 46 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 8/21/2017. Signed by Clerk on 6/22/2017. (Enderlin, M.) (Entered: 06/22/2017) |
| 06/22/2017 | 50 | ORDER granting 47 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 8/21/2017. Signed by Clerk on 6/22/2017. (Enderlin, M.) (Entered: 06/22/2017) |
| 06/22/2017 | 51 | ORDER granting 48 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 8/21/2017. Signed by Clerk on 6/22/2017. (Enderlin, M.) (Entered: 06/22/2017) |
| 06/22/2017 | 52 | CERTIFICATE OF GOOD STANDING re 46 MOTION for Attorney(s) Andrew P. Arnold to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4443870) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 06/22/2017) |
| 06/22/2017 | 53 | CERTIFICATE OF GOOD STANDING re 47 MOTION for Attorney(s) William S. Norton to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4443895) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 06/22/2017) |
| 06/22/2017 | 54 | CERTIFICATE OF GOOD STANDING re 48 MOTION for Attorney(s) Joshua C. Littlejohn to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4443917) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 06/22/2017) |
| 07/12/2017 | 55 | MOTION for Attorney(s) Alfred L. Fatale III to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4465393) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Affidavit of Alfred L. Fatale III)(Narwold, William) (Entered: 07/12/2017) |
| 07/12/2017 | 56 | MOTION for Attorney(s) Corban S. Rhodes to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4465420) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Affidavit of Corban S. Rhodes)(Narwold, William) (Entered: 07/12/2017) |
| 07/12/2017 | 57 | MOTION for Attorney(s) Michael W. Stocker to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4465444) by Erste–Sparinvest |

| | | |
|---|---|---|
| | | Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Affidavit of Michael W. Stocker)(Narwold, William) (Entered: 07/12/2017) |
| 07/12/2017 | 58 | MOTION for Attorney(s) Ross M. Kamhi to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205–4465460) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A – Affidavit of Ross M. Kamhi)(Narwold, William) (Entered: 07/12/2017) |
| 07/13/2017 | 59 | ORDER granting 55 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 9/11/2017. Signed by Clerk on 7/13/2017. (Enderlin, M.) (Entered: 07/13/2017) |
| 07/13/2017 | 60 | ORDER granting 56 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 9/11/2017. Signed by Clerk on 7/13/2017. (Enderlin, M.) (Entered: 07/13/2017) |
| 07/13/2017 | 61 | ORDER granting 57 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 9/11/2017. Signed by Clerk on 7/13/2017. (Enderlin, M.) (Entered: 07/13/2017) |
| 07/13/2017 | 62 | ORDER granting 58 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 9/11/2017. Signed by Clerk on 7/13/2017. (Enderlin, M.) (Entered: 07/13/2017) |
| 07/14/2017 | 63 | AMENDED COMPLAINT *for Violation of the Federal Securities Laws* against All Defendants, filed by Public Employee Retirement System of Idaho, Erste–Sparinvest Kapitalanlagegesellschaft mbH.(Narwold, William) (Entered: 07/14/2017) |
| 07/14/2017 | 64 | NOTICE by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho re 63 Amended Complaint *Certification* (Narwold, William) (Entered: 07/14/2017) |
| 07/17/2017 | | Request for Clerk to issue summons as to David Brennan. (Narwold, William) (Entered: 07/17/2017) |
| 07/17/2017 | | Request for Clerk to issue summons as to David J. Anderson. (Narwold, William) (Entered: 07/17/2017) |
| 07/17/2017 | | Request for Clerk to issue summons as to Ludwig N. Hantson. (Narwold, William) (Entered: 07/17/2017) |
| 07/17/2017 | | Request for Clerk to issue summons as to Carsten Thiel. (Narwold, William) (Entered: 07/17/2017) |
| 07/18/2017 | 65 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *David Brennan* with answer to complaint due within *21* days. Attorney *William H. Narwold* *Motley Rice LLC* *One Corporate Ctr., 17th Fl. 20 Church St.* *Hartford, CT 06103*. (Enderlin, M.) (Entered: 07/18/2017) |
| 07/18/2017 | 66 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *David J. Anderson* with answer to complaint due within *21* days. Attorney *William H. Narwold* *Motley Rice LLC* *One Corporate Ctr., 17th Fl. 20 Church St.* *Hartford, CT 06103*. (Enderlin, M.) (Entered: 07/18/2017) |
| 07/18/2017 | 67 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Ludwig N. Hantson* with answer to complaint due within *21* days. Attorney *William H. Narwold* *Motley Rice LLC* *One Corporate Ctr., 17th Fl. 20 Church St.* *Hartford, CT 06103*. (Enderlin, M.) (Entered: 07/18/2017) |
| 07/18/2017 | 68 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Carsten Thiel* with answer to complaint due within *21* days. Attorney *William H. Narwold* *Motley Rice LLC* *One Corporate Ctr., 17th Fl. 20 Church St.* *Hartford, CT 06103*. (Enderlin, M.) (Entered: 07/18/2017) |
| 07/21/2017 | 69 | NOTICE by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho re 63 Amended Complaint *Certification of Public Employee Retirement System of Idaho* (Narwold, William) (Entered: 07/21/2017) |
| 07/21/2017 | 70 | NOTICE by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho re 63 Amended Complaint *Certification of Erste–Sparinvest Kapitalanlagegesellschaft mbH* (Narwold, William) (Entered: |

| | | |
|---|---|---|
| | | 07/21/2017) |
| 08/14/2017 | 71 | Joint STIPULATION *and [Proposed] Order* by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Soloway, Audra) (Entered: 08/14/2017) |
| 08/31/2017 | 72 | ORDER: The Joint Stipulation (Doc. No. 71 ) is hereby APPROVED. The defendants shall respond to the consolidated class action complaint by 9/12/17; the plaintiffs shall respond to any motion to dismiss by 11/13/17; and the defendants shall file any reply by 12/28/17. It is so ordered. Signed by Judge Alvin W. Thompson on 8/31/17. (Rafferty, M.) (Entered: 08/31/2017) |
| 08/31/2017 | 73 | MOTION for Leave to File Excess Pages by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Soloway, Audra) (Entered: 08/31/2017) |
| 08/31/2017 | 74 | CERTIFICATE OF GOOD STANDING re 55 MOTION for Attorney(s) Alfred L. Fatale III to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4465393) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Fatale, Alfred) (Entered: 08/31/2017) |
| 08/31/2017 | 75 | CERTIFICATE OF GOOD STANDING re 56 MOTION for Attorney(s) Corban S. Rhodes to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4465420) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Rhodes, Corban) (Entered: 08/31/2017) |
| 08/31/2017 | 76 | CERTIFICATE OF GOOD STANDING re 58 MOTION for Attorney(s) Ross M. Kamhi to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4465460) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Kamhi, Ross) (Entered: 08/31/2017) |
| 08/31/2017 | 77 | CERTIFICATE OF GOOD STANDING re 57 MOTION for Attorney(s) Michael W. Stocker to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number 0205−4465444) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Stocker, Michael) (Entered: 08/31/2017) |
| 08/31/2017 | | Answer deadline updated for Alexion Pharmaceuticals Inc to 9/12/2017; David J. Anderson to 9/12/2017; Leonard Bell to 9/12/2017; David Brennan to 9/12/2017; David L. Hallal to 9/12/2017; Ludwig N. Hantson to 9/12/2017; Vikas Sinha to 9/12/2017; Carsten Thiel to 9/12/2017. (Ferguson, L.) (Entered: 09/20/2017) |
| 08/31/2017 | | Set/Reset Deadlines as to 79 MOTION to Dismiss *the Consolidated Class Action Complaint*. Responses due by 11/13/2017. (Ferguson, L.) (Entered: 09/20/2017) |
| 09/08/2017 | 78 | ORDER: Defendants' Unopposed Motion for Leave to Extend Page Limitations (Doc. No. 73 ) is hereby GRANTED. Defendants' memorandum of law in support of their motion to dismiss shall not exceed 60 pages. It is so ordered. Signed by Judge Alvin W. Thompson on 9/8/2017. (Ly, T.) (Entered: 09/08/2017) |
| 09/12/2017 | 79 | MOTION to Dismiss *the Consolidated Class Action Complaint* by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel.Responses due by 10/3/2017 (Attachments: # 1 Memorandum in Support, # 2 Declaration of Maxwell A. Kosman, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15)(Kramer, Daniel) (Entered: 09/12/2017) |
| 10/18/2017 | 80 | MOTION Lead Plaintiffs' Motion To Partially Lift The PSLRA Stay of Discovery by Erste−Sparinvest Kapitalanlagegesellschaft mbH.Responses due by 11/8/2017 (Narwold, William) (Entered: 10/18/2017) |
| 10/18/2017 | 81 | Memorandum in Support re 80 MOTION Lead Plaintiffs' Motion To Partially Lift The PSLRA Stay of Discovery filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH. (Narwold, William) (Entered: 10/18/2017) |
| 10/18/2017 | 82 | AFFIDAVIT re 80 MOTION Lead Plaintiffs' Motion To Partially Lift The PSLRA Stay of Discovery Signed By William H. Narwold filed by Erste−Sparinvest |

| | | Kapitalanlagegesellschaft mbH. (Narwold, William) (Entered: 10/18/2017) |
|---|---|---|
| 11/03/2017 | 83 | MOTION for Leave to File Excess Pages by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 11/03/2017) |
| 11/07/2017 | 84 | ORDER: The lead plaintiffs' Unopposed Motion to Extend Page Limitations (Doc. No. 83 ) is hereby GRANTED. The plaintiffs' memorandum of law in opposition to the defendants' Motion to Dismiss (Doc. No. 79 ) shall not exceed 60 pages. It is so ordered. Signed by Judge Alvin W. Thompson on 11/7/2017. (Ly, T.) (Entered: 11/07/2017) |
| 11/08/2017 | 85 | Memorandum in Opposition re 80 MOTION Lead Plaintiffs' Motion To Partially Lift The PSLRA Stay of Discovery filed by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Kramer, Daniel) (Entered: 11/08/2017) |
| 11/13/2017 | 86 | Memorandum in Opposition re 79 MOTION to Dismiss *the Consolidated Class Action Complaint* filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 11/13/2017) |
| 11/22/2017 | 87 | REPLY to Response to 80 MOTION Lead Plaintiffs' Motion To Partially Lift The PSLRA Stay of Discovery filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 11/22/2017) |
| 12/12/2017 | 88 | MOTION for Leave to File Excess Pages by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Soloway, Audra) (Entered: 12/12/2017) |
| 12/13/2017 | 89 | MOTION for Attorney(s) Matthew J. Hrutkay to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC−4642251) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 12/13/2017) |
| 12/13/2017 | 90 | MOTION for Attorney(s) James W. Johnson to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC−4642278) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 12/13/2017) |
| 12/13/2017 | 91 | MOTION for Attorney(s) Michael H. Rogers to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC−4642302) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 12/13/2017) |
| 12/14/2017 | 92 | ORDER granting 89 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 2/12/2018. Signed by Clerk on 12/14/2017. (Enderlin, M.) (Entered: 12/14/2017) |
| 12/14/2017 | 93 | ORDER granting 90 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 2/12/2018. Signed by Clerk on 12/14/2017. (Enderlin, M.) (Entered: 12/14/2017) |
| 12/14/2017 | 94 | ORDER granting 91 Motion to Appear Pro Hac Vice Certificate of Good Standing due by 2/12/2018. Signed by Clerk on 12/14/2017. (Enderlin, M.) (Entered: 12/14/2017) |
| 12/15/2017 | 95 | CERTIFICATE OF GOOD STANDING re 90 MOTION for Attorney(s) James W. Johnson to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC−4642278) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Johnson, James) (Entered: 12/15/2017) |
| 12/15/2017 | 96 | CERTIFICATE OF GOOD STANDING re 91 MOTION for Attorney(s) Michael H. Rogers to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC−4642302) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Rogers, Michael) (Entered: 12/15/2017) |
| 12/15/2017 | 97 | CERTIFICATE OF GOOD STANDING re 89 MOTION for Attorney(s) Matthew J. Hrutkay to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC−4642251) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Hrutkay, Matthew) (Entered: 12/15/2017) |

| 12/15/2017 | 98 | ORDER: The Motion for Leave to Extend Page Limitations (Doc. No. 88 ) is hereby GRANTED. The defendants' reply to the Memorandum in Opposition (Doc. No. 86 ) to the Motion to Dismiss (Doc. No. 79 ) shall not exceed 22 pages. It is so ordered. Signed by Judge Alvin W. Thompson on 12/15/2017. (Ly, T.) (Entered: 12/18/2017) |
|---|---|---|
| 12/28/2017 | 99 | REPLY to Response to 79 MOTION to Dismiss *the Consolidated Class Action Complaint* filed by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Kramer, Daniel) (Entered: 12/28/2017) |
| 01/03/2018 | 100 | NOTICE of Appearance by James W. Johnson on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho *and the proposed class* (Johnson, James) (Entered: 01/03/2018) |
| 01/03/2018 | 101 | NOTICE of Appearance by Matthew J. Hrutkay on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho *and the proposed class* (Hrutkay, Matthew) (Entered: 01/03/2018) |
| 01/03/2018 | 102 | NOTICE of Appearance by Michael H. Rogers on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho *and the proposed class* (Rogers, Michael) (Entered: 01/03/2018) |
| 07/11/2018 | 103 | MOTION for Michael W. Stocker and Matthew J. Hrutkay to Withdraw as Attorney *and for Removal from the Court's Service List* by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Johnson, James) (Entered: 07/11/2018) |
| 07/12/2018 | 104 | ORDER for Michael W. Stocker and Matthew J. Hrutkay to Withdraw as Attorney. The Motion for Withdrawal of Counsel (Doc. No. 103 ) is hereby GRANTED. The appearances of Michael W. Stocker and Matthew J. Hrutkay are hereby terminated. It is so ordered. Signed by Judge Alvin W. Thompson on 7/12/2018. (Ly, T.) (Entered: 07/12/2018) |
| 11/14/2018 | 105 | NOTICE by Erste−Sparinvest Kapitalanlagegesellschaft mbH *of Name Change* (Narwold, William) (Entered: 11/14/2018) |
| 02/27/2019 | 106 | MOTION FOR LEAVE TO FILE SUPPLEMENTAL SUPPORT IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS AND LEAD PLAINTIFFS REQUEST FOR JUDICIAL NOTICE by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho.Responses due by 3/20/2019 (Johnson, James) (Entered: 02/27/2019) |
| 02/27/2019 | 107 | AFFIDAVIT re 106 MOTION FOR LEAVE TO FILE SUPPLEMENTAL SUPPORT IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS AND LEAD PLAINTIFFS REQUEST FOR JUDICIAL NOTICE −−*[DECLARATION OF JAMES W. JOHNSON IN SUPPORT OF LEAD PLAINTIFFS REQUEST FOR JUDICIAL NOTICE AND MOTION FOR LEAVE TO FILE SUPPLEMENTAL SUPPORT IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS]*−− Signed By James W. Johnson filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Johnson, James) (Entered: 02/27/2019) |
| 03/01/2019 | 108 | ORDER: The Motion for Leave to File Supplemental Report (ECF No. 106 ) is hereby GRANTED. The defendants shall respond by March 8, 2019. It is so ordered. Signed by Judge Alvin W. Thompson on 3/1/2019. (Jerjian, O.) (Entered: 03/01/2019) |
| 03/01/2019 | | Set/Reset Deadlines as to 79 MOTION to Dismiss *the Consolidated Class Action Complaint*. Responses due by 3/8/2019. (Ferguson, L.) (Entered: 03/04/2019) |
| 03/05/2019 | 109 | NOTICE of Appearance by Robyn E. Gallagher on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (Gallagher, Robyn) (Entered: 03/05/2019) |
| 03/05/2019 | 110 | First MOTION for Extension of Time *to* Respond 107 Affidavit,, by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Gallagher, Robyn) (Entered: 03/05/2019) |

| | | |
|---|---|---|
| 03/06/2019 | 111 | ORDER: The Defendants' Motion for Extension of Time (ECF No. 110 ) to respond to the plaintiffs' request for judicial notice (ECF No. 107 ) is hereby GRANTED up to and including April 12, 2019. It is so ordered. Signed by Judge Alvin W. Thompson on 3/6/2019. (Jerjian, O.) (Entered: 03/06/2019) |
| 03/22/2019 | 112 | ORDER: The defendants have reported that the parties are in the midst of settlement discussions. If the settlement discussions are successful, the currently pending motions will be moot. Therefore, the Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 79 ), the Lead Plaintiffs Motion to Partially Lift the PSLRA Stay of Discovery (ECF No. 80 ), and the Plaintiffs' Request for Judicial Notice of Supplemental Information in Support of the Opposition to the Motion to Dismiss (ECF No. 107 ) are TERMINATED without prejudice as to reopening if the settlement discussions are not successful. At that time, the court will set a deadline for the defendants to respond to the Plaintiffs' Request for Judicial Notice of Supplemental Information in Support of the Opposition to the Motion to Dismiss (ECF No. 107 ). It is so ordered. Signed by Judge Alvin W. Thompson on 3/22/2019. (Jerjian, O.) (Entered: 03/22/2019) |
| 03/25/2019 | 113 | NOTICE OF E–FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Status Conference set for 3/26/2019 04:30 PM before Judge Alvin W. Thompson. Conference call instructions were emailed to counsel. (Jerjian, O.) (Entered: 03/25/2019) |
| 03/26/2019 | 114 | Minute Entry for proceedings held before Judge Alvin W. Thompson: A telephonic status conference was held on 3/26/2019 at 4:30 p.m. in response to communication from counsel for the plaintiffs that, in fact, there had been no settlement discussions in this case. The court informed counsel that it would issue an order reopening this case. The court also informed counsel that it was denying the Lead Plaintiffs' Motion to Partially Lift the PSLRA Stay of Discovery (ECF No. 80 ). In addition, the court informed counsel that it was preparing a ruling granting the Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 79 ) and inquired of plaintiffs' counsel as to whether the plaintiffs' counsel was satisfied to rely on the current Amended Complaint (ECF No. 63 ) or would be seeking leave to amend the complaint after the court issued an order granting the motion to dismiss. The court indicated that if the plaintiffs wished to file a second amended complaint, they would be allowed to do so. Counsel for the plaintiffs asked for time to consider their options. Total time: 7 minutes. (Court Reporter Corinna Thompson.) (Jerjian, O.) (Entered: 04/02/2019) |
| 04/02/2019 | 115 | ORDER REOPENING CASE: In accordance with the discussion during the telephonic status conference on March 26, 2019, the Clerk shall reopen this case. It is so ordered. Signed by Judge Alvin W. Thompson on 4/2/2019. (Jerjian, O.) (Entered: 04/02/2019) |
| 04/02/2019 | 116 | SCHEDULING ORDER: Counsel for the plaintiffs have informed the court that the plaintiffs wish to file a second amended complaint. It shall be filed by May 31, 2019. The parties shall submit a proposed scheduling order as to additional deadlines. This order renders moot the motion to dismiss the amended complaint. See ECF No. 79 . It is so ordered. Signed by Judge Alvin W. Thompson on 4/2/2019. (Jerjian, O.) (Entered: 04/02/2019) |
| 05/28/2019 | 117 | MOTION for Attorney(s) Margaret Schmidt to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC–5295473) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 05/28/2019) |
| 05/28/2019 | 118 | MOTION for Attorney(s) John Esmay to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC–5295488) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 05/28/2019) |
| 05/29/2019 | 119 | ORDER granting Motion for Attorney Margaret Schmidt to be Admitted Pro Hac Vice (ECF No. 117 ) and Motion for Attorney John Esmay to be Admitted Pro Hac Vice (ECF No. 118 ). Certificates of Good Standing due by 7/28/2019. It is so ordered. Signed by Judge Alvin W. Thompson on 5/29/2019. (Jerjian, O.) (Entered: 05/29/2019) |

| 05/30/2019 | 120 | NOTICE of Appearance by Margaret Schmidt on behalf of Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho *and the proposed class* (Schmidt, Margaret) (Entered: 05/30/2019) |
|---|---|---|
| 06/02/2019 | 121 | AMENDED COMPLAINT *for Violations of the Federal Securities Laws* against All Defendants, filed by Public Employee Retirement System of Idaho, Erste–Sparinvest Kapitalanlagegesellschaft mbH. (Attachments: # 1 Affidavit of Michael H. Rogers)(Rogers, Michael) (Entered: 06/02/2019) |
| 06/04/2019 | 122 | MOTION for Attorney(s) James M. Hughes to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC–5305425) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 06/04/2019) |
| 06/06/2019 | 123 | NOTICE of Appearance by John J Esmay on behalf of Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho (Esmay, John) (Entered: 06/06/2019) |
| 06/06/2019 | 124 | CERTIFICATE OF GOOD STANDING re 118 MOTION for Attorney(s) John Esmay to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC–5295488) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Esmay, John) (Entered: 06/06/2019) |
| 06/06/2019 | 125 | CERTIFICATE OF GOOD STANDING re 117 MOTION for Attorney(s) Margaret Schmidt to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC–5295473) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Schmidt, Margaret) (Entered: 06/06/2019) |
| 06/17/2019 | 126 | Joint STIPULATION *and [Proposed] Order* by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig Hantson, Vikas Sinha, Carsten Thiel. (Soloway, Audra) (Entered: 06/17/2019) |
| 06/18/2019 | 127 | ORDER: The Joint Stipulation (ECF No. 126 ) is hereby APPROVED. The motion to dismiss shall be filed by August 2, 2019. The opposition shall be filed by October 2, 2019. Any reply shall be filed by November 16, 2019. It is so ordered. Signed by Judge Alvin W. Thompson on 6/18/2019. (Jerjian, O.) (Entered: 06/18/2019) |
| 06/18/2019 | | Set Deadlines: Dispositive Motions (Motion to Dismiss) due by 8/2/2019 (Ferguson, L.) (Entered: 06/27/2019) |
| 07/25/2019 | 128 | Consent MOTION for Leave to File Excess Pages by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig Hantson, Vikas Sinha, Carsten Thiel. (Gallagher, Robyn) (Entered: 07/25/2019) |
| 07/26/2019 | 129 | ORDER: The Defendants' Consent Motion for Leave to Extend Page Limitations (ECF No. 128 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 7/26/2019. (Jerjian, O.) (Entered: 07/26/2019) |
| 08/02/2019 | 130 | MOTION to Dismiss by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel.Responses due by 8/23/2019 (Attachments: # 1 Memorandum in Support, # 2 Declaration of Maxwell A. Kosman in Support, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13)(Kramer, Daniel) (Entered: 08/02/2019) |
| 09/13/2019 | 131 | Consent MOTION for Leave to Extend Page Limitations by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho.Responses due by 10/4/2019 (Narwold, William) (Entered: 09/13/2019) |
| 09/16/2019 | 132 | ORDER: Motion for Leave to Extend Page Limitations (ECF No. 131 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 9/16/19. (Ferguson, L.) (Entered: 09/16/2019) |
| 09/25/2019 | 133 | MOTION for Attorney(s) Gregg S. Levin to be Admitted Pro Hac Vice (paid $75 PHV fee; receipt number ACTDC–5456097) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 09/25/2019) |

| | | |
|---|---|---|
| 09/27/2019 | 134 | MOTION for Attorney(s) James M. Hughes to be Admitted Pro Hac Vice by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Supplemental Affidavit)(Narwold, William) (Entered: 09/27/2019) |
| 09/27/2019 | 135 | MOTION for Attorney(s) Gregg S. Levin to be Admitted Pro Hac Vice by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Supplemental Affidavit)(Narwold, William) (Entered: 09/27/2019) |
| 09/30/2019 | 136 | ORDER granting 134 Motion to Appear for Attorney James M. Hughes to be Admitted Pro Hac Vice. Certificate of Good Standing due by 11/29/2019. Signed by Clerk on 9/30/2019. (Agati, Kathryn) (Entered: 09/30/2019) |
| 09/30/2019 | 137 | ORDER granting 135 Motion to Appear for Attorney Gregg S. Levin to be Admitted Pro Hac Vice. Certificate of Good Standing due by 11/29/2019. Signed by Clerk on 9/30/2019. (Agati, Kathryn) (Entered: 09/30/2019) |
| 10/02/2019 | 138 | CERTIFICATE OF GOOD STANDING re 135 MOTION for Attorney(s) Gregg S. Levin to be Admitted Pro Hac Vice by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Levin, Gregg) (Entered: 10/02/2019) |
| 10/02/2019 | 139 | NOTICE of Appearance by Gregg S. Levin on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho (Levin, Gregg) (Entered: 10/02/2019) |
| 10/02/2019 | 140 | CERTIFICATE OF GOOD STANDING re 134 MOTION for Attorney(s) James M. Hughes to be Admitted Pro Hac Vice by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Hughes, James) (Entered: 10/02/2019) |
| 10/02/2019 | 141 | NOTICE of Appearance by James M. Hughes on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho (Hughes, James) (Entered: 10/02/2019) |
| 10/02/2019 | 142 | Memorandum in Opposition re 130 MOTION to Dismiss filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Narwold, William) (Entered: 10/02/2019) |
| 11/05/2019 | 143 | MOTION for Leave to File Excess Pages by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Soloway, Audra) (Entered: 11/05/2019) |
| 11/12/2019 | 144 | ORDER: Defendants' Unopposed Motion for Leave to Extend Page Limitations (ECF No. 143 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 11/11/2019. (Brambila, N.) (Entered: 11/12/2019) |
| 11/15/2019 | 145 | REPLY to Response to 130 MOTION to Dismiss filed by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig Hantson, Vikas Sinha, Carsten Thiel. (Kramer, Daniel) (Entered: 11/15/2019) |
| 01/28/2020 | 146 | MOTION for Maxwell A.H. Kosman to Withdraw as Attorney by Alexion Pharmaceuticals Inc, Leonard Bell, David Brennan, David L. Hallal, Ludwig Hantson, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Gallagher, Robyn) (Entered: 01/28/2020) |
| 01/28/2020 | 147 | MOTION for Maxwell A. H. Kosman to Withdraw as Attorney by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig Hantson, Vikas Sinha, Carsten Thiel. (Ring, David) (Entered: 01/28/2020) |
| 01/29/2020 | 148 | ORDER: The Motion for Withdrawal of Appearance (ECF No. 147 ) is hereby GRANTED. The Clerk shall terminate the appearance of Maxwell A. H. Kosman as counsel for defendants Alexion Pharmaceuticals, Inc., Leonard Bell, David L. Hallal, Vikas Sinha, David Brennan, David J. Anderson, Ludwig N. Hantson, and Carsten Thiel. It is so ordered. Signed by Judge Alvin W. Thompson on 1/29/2020. (Brambila, N.) (Entered: 01/29/2020) |

| 01/29/2020 | 149 | ORDER: The Motion for Withdrawal of Appearance (ECF No. 146 ) is hereby DENIED as moot. See ECF No. 148. It is so ordered. Signed by Judge Alvin W. Thompson on 1/29/2020. (Brambila, N.) (Entered: 01/29/2020) |
| 06/15/2020 | 150 | MOTION for Leave to File *Supplemental Brief in Support of Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint* by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Vikas Sinha, Carsten Thiel. (Kramer, Daniel) (Entered: 06/15/2020) |
| 06/16/2020 | 151 | ORDER: The Motion for Leave to File a Supplemental Brief in Support of Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 150 ) is hereby GRANTED. Defendants shall docket their supplemental brief forthwith. It is so ordered. Signed by Judge Alvin W. Thompson on 6/16/2020. (Clough, M.) (Entered: 06/16/2020) |
| 06/16/2020 | 152 | Supplemental Memorandum in Support re 130 MOTION to Dismiss filed by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig Hantson, Vikas Sinha, Carsten Thiel. (Kramer, Daniel) (Entered: 06/16/2020) |
| 06/17/2020 | 153 | RESPONSE re 152 Memorandum in Support of Motion filed by Boston Retirement System. (Narwold, William) (Entered: 06/17/2020) |
| 07/24/2020 | 154 | MOTION for Leave to File *a Supplemental Brief in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint* by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Johnson, James) (Entered: 07/24/2020) |
| 07/27/2020 | 155 | ORDER: The Motion for Leave to File a Supplemental Brief in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 154 ) is hereby GRANTED. Plaintiffs shall docket their supplemental brief forthwith. Any response by the defendants is due by August 6, 2020. It is so ordered. Signed by Judge Alvin W. Thompson on 7/27/2020. (Clough, M.) (Entered: 07/27/2020) |
| 07/27/2020 | 156 | Supplemental Memorandum in Opposition */Lead Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint* re 130 MOTION to Dismiss filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A)(Johnson, James) (Entered: 07/27/2020) |
| 07/27/2020 | | Set/Reset Deadlines as to 130 MOTION to Dismiss . Reply due by 8/6/2020. (Ferguson, L.) (Entered: 07/28/2020) |
| 08/06/2020 | 157 | RESPONSE re 156 Memorandum in Opposition to Motion, *(Defendants' Reply Brief in Response to Lead Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint)* filed by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig Hantson, Vikas Sinha, Carsten Thiel. (Kramer, Daniel) (Entered: 08/06/2020) |
| 09/10/2020 | 158 | MOTION for Leave to File *Supplemental Brief in Further Support of Opposition to Motion to Dismiss* by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit 1 − Proposed Supplemental Brief, # 2 Exhibit 2 − Order in Holwill v AbbVie Inc (ND Ill))(Narwold, William) (Entered: 09/10/2020) |
| 09/14/2020 | 159 | ORDER: The Motion for Leave to File a Supplemental Brief in Opposition to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 158 ) is hereby GRANTED. The plaintiff shall docket their supplemental brief forthwith. Any response by the defendants is due by September 21, 2020. It is so ordered. Signed by Judge Alvin W. Thompson on 9/11/2020. (Clough, M.) (Entered: 09/14/2020) |
| 09/14/2020 | 160 | Supplemental Memorandum in Opposition *to Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint* re 130 MOTION to Dismiss filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Exhibit A − Order in Holwill v AbbVie Inc (ND |

| | | |
|---|---|---|
| | | Ill))(Narwold, William) (Entered: 09/14/2020) |
| 09/21/2020 | 161 | REPLY to Response to 130 MOTION to Dismiss *Response To Lead Plaintiffs Supplemental Brief In Opposition To Defendants Motion To Dismiss* filed by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Ring, David) (Entered: 09/21/2020) |
| 10/26/2020 | 162 | MOTION for Margaret Schmidt to Withdraw as Attorney by Erste–Sparinvest Kapitalanlagegegesellschaft mbH, Public Employee Retirement System of Idaho. (Schmidt, Margaret) (Entered: 10/26/2020) |
| 10/28/2020 | 163 | ORDER: Counsel's Motion to Withdraw as Attorney (ECF No. 162 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 10/28/2020. (Burks, L.) (Entered: 10/28/2020) |
| 07/28/2021 | 164 | MOTION to Intervene *by Putative Class Member for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose* by The Alger Funds.Responses due by 8/18/2021 (Attachments: # 1 Memorandum in Support)(Hoffman, Ari) (Entered: 07/28/2021) |
| 07/29/2021 | 165 | NOTICE of Appearance by Ari J. Hoffman on behalf of The Alger Funds (Hoffman, Ari) (Entered: 07/29/2021) |
| 08/11/2021 | 166 | MOTION for Attorney(s) Marc B. Kramer to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–6608252) by The Alger Funds. (Attachments: # 1 Affidavit)(Hoffman, Ari) (Entered: 08/11/2021) |
| 08/11/2021 | 167 | MOTION for Attorney(s) Jarett N. Sena to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–6608257) by The Alger Funds. (Attachments: # 1 Affidavit)(Hoffman, Ari) (Entered: 08/11/2021) |
| 08/12/2021 | 168 | ORDER granting 166 Motion to Appear for Attorney Marc B. Kramer to be Admitted Pro Hac Vice. Certificate of Good Standing due by 10/11/2021. Signed by Clerk on 8/12/2021. (Agati, Kathryn) (Entered: 08/12/2021) |
| 08/12/2021 | 169 | ORDER granting 167 Motion to Appear for Attorney Jarett N. Sena to be Admitted Pro Hac Vice. Certificate of Good Standing due by 10/11/2021. Signed by Clerk on 8/12/2021. (Agati, Kathryn) (Entered: 08/12/2021) |
| 08/18/2021 | 170 | Memorandum in Opposition re 164 MOTION to Intervene *by Putative Class Member for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose*, 130 MOTION to Dismiss filed by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal. (Gallagher, Robyn) (Entered: 08/18/2021) |
| 08/19/2021 | 171 | Corporate Disclosure Statement by Alexion Pharmaceuticals Inc identifying Corporate Parent AstraZeneca PLC for Alexion Pharmaceuticals Inc. (Kramer, Daniel) (Entered: 08/19/2021) |
| 08/19/2021 | 172 | ORDER: For the reasons set forth in the attached document, Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 130 ) is hereby GRANTED in part and DENIED in part. Count I and Count II are dismissed as to defendants Sinha, Brennan, Anderson, Hantson, and Thiel. Count III is dismissed as to defendants Brennan, Anderson, Hantson, and Thiel. Signed by Judge Alvin W. Thompson on 8/19/2021. (Mata, E.) (Entered: 08/19/2021) |
| 08/30/2021 | 173 | CERTIFICATE OF GOOD STANDING re 166 MOTION for Attorney(s) Marc B. Kramer to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–6608252) by The Alger Funds. (Hoffman, Ari) (Entered: 08/30/2021) |
| 08/30/2021 | 174 | CERTIFICATE OF GOOD STANDING re 167 MOTION for Attorney(s) Jarett N. Sena to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–6608257) by The Alger Funds. (Hoffman, Ari) (Entered: 08/30/2021) |
| 09/01/2021 | 175 | MOTION for Extension of Time until October 18, 2021*to* answer 121 Amended Complaint, by Alexion Pharmaceuticals Inc, David J. Anderson, Leonard Bell, David Brennan, David L. Hallal, Ludwig N. Hantson, Vikas Sinha, Carsten Thiel. (Gallagher, Robyn) (Entered: 09/01/2021) |

| | | |
|---|---|---|
| 09/01/2021 | 176 | REPLY to Response to 164 MOTION to Intervene *by Putative Class Member for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose* filed by The Alger Funds. (Hoffman, Ari) (Entered: 09/01/2021) |
| 09/03/2021 | 177 | ORDER: The defendants' Motion for Extension of Time (ECF No. 175 ) is hereby GRANTED up to and including October 18, 2021. It is so ordered. Signed by Judge Alvin W. Thompson on 9/2/2021. (Milov–Cordoba, M.) (Entered: 09/03/2021) |
| 09/03/2021 | | Answer deadline updated for Alexion Pharmaceuticals Inc to 10/18/2021; David J. Anderson to 10/18/2021; Leonard Bell to 10/18/2021; David Brennan to 10/18/2021; David L. Hallal to 10/18/2021; Ludwig Hantson to 10/18/2021; Vikas Sinha to 10/18/2021; Carsten Thiel to 10/18/2021. (Ferguson, L.) (Entered: 09/07/2021) |
| 09/08/2021 | 178 | NOTICE of Appearance by Jarett Sena on behalf of The Alger Funds (Sena, Jarett) (Entered: 09/08/2021) |
| 09/08/2021 | 179 | NOTICE of Appearance by Marc Kramer on behalf of The Alger Funds (Kramer, Marc) (Entered: 09/08/2021) |
| 09/30/2021 | 180 | NOTICE of Appearance by Mathew P. Jasinski on behalf of Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho (Jasinski, Mathew) (Entered: 09/30/2021) |
| 10/01/2021 | 181 | REPORT of Rule 26(f) Planning Meeting. (Attachments: # 1 Text of Proposed Order Exhibit A – [Proposed] Civil Case Management Order)(Narwold, William) (Entered: 10/01/2021) |
| 10/18/2021 | 182 | ANSWER to 121 Amended Complaint, with Affirmative Defenses and Special Defenses by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha.(Soloway, Audra) (Entered: 10/18/2021) |
| 11/04/2021 | 183 | MOTION for Attorney(s) James T. Christie to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number BCTDC–6711752) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit of James T. Christie)(Narwold, William) (Entered: 11/04/2021) |
| 11/05/2021 | 184 | ORDER granting 183 Motion to Appear for Attorney James T. Christie to be Admitted Pro Hac Vice. Certificate of Good Standing due by 1/4/2022. Signed by Clerk on 11/5/2021. (Agati, Kathryn) (Entered: 11/05/2021) |
| 11/09/2021 | 185 | CERTIFICATE of GOOD STANDING re 183 MOTION for Attorney(s) James T. Christie to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number BCTDC–6711752) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Christie, James) (Entered: 11/09/2021) |
| 12/02/2021 | 186 | MOTION for Attorney(s) Christopher F. Moriarty to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–6743112) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit of Christopher F. Moriarty)(Narwold, William) (Entered: 12/02/2021) |
| 12/03/2021 | 187 | MOTION for Attorney(s) Meredith Weatherby to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–6744135) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit of Meredith Weatherby)(Narwold, William) (Entered: 12/03/2021) |
| 12/08/2021 | 188 | MOTION for Attorney(s) Meredith Weatherby to be Admitted Pro Hac Vice by Erste–Sparinvest Kapitalanlagegesellschaft mbH. (Attachments: # 1 Affidavit of Meredith Weatherby)(Narwold, William) (Entered: 12/08/2021) |
| 12/09/2021 | 189 | ORDER granting 188 Motion to Appear for Attorney Meredith Weatherby to be Admitted Pro Hac Vice. Certificate of Good Standing due by 2/7/2022. Signed by Clerk on 12/9/2021. (Agati, Kathryn) (Entered: 12/09/2021) |
| 12/09/2021 | 190 | ORDER finding as moot 187 Motion to Appear for Attorney Meredith Weatherby to be Admitted Pro Hac Vice. Signed by Judge Alvin W. Thompson on 12/9/2021. (Agati, Kathryn) (Entered: 12/09/2021) |

| | | |
|---|---|---|
| 12/09/2021 | 191 | MOTION for Attorney(s) Jane O'Brien, Jonathan Hurwitz, Tamar Holoshitz to be Admitted Pro Hac Vice (paid $600 PHV fee; receipt number ACTDC−6751743) by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Attachments: # 1 Affidavit Jane O'Brien, # 2 Affidavit Jonathan Hurwitz, # 3 Affidavit Tamar Holoshitz, # 4 Exhibit Good Standing Certificate Hurwitz, # 5 Exhibit Good Standing Certificate Holoshitz)(Ring, David) (Entered: 12/09/2021) |
| 12/09/2021 | 192 | CERTIFICATE OF GOOD STANDING re 188 MOTION for Attorney(s) Meredith Weatherby to be Admitted Pro Hac Vice by Erste−Sparinvest Kapitalanlagegesellschaft mbH. (Narwold, William) (Entered: 12/09/2021) |
| 12/09/2021 | 193 | CERTIFICATE OF GOOD STANDING re 191 MOTION for Attorney(s) Jane O'Brien, Jonathan Hurwitz, Tamar Holoshitz to be Admitted Pro Hac Vice (paid $600 PHV fee; receipt number ACTDC−6751743) by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Ring, David) (Entered: 12/09/2021) |
| 12/10/2021 | 194 | MOTION for Attorney(s) Christopher F. Moriarty to be Admitted Pro Hac Vice by Erste−Sparinvest Kapitalanlagegesellschaft mbH. (Attachments: # 1 Affidavit of Christopher F. Moriarty)(Narwold, William) (Entered: 12/10/2021) |
| 12/10/2021 | 195 | ORDER granting 194 Motion to Appear for Attorney Christopher F. Moriarty to be Admitted Pro Hac Vice. Certificate of Good Standing due by 2/8/2022. Signed by Clerk on 12/10/2021. (Agati, Kathryn) (Entered: 12/10/2021) |
| 12/10/2021 | 196 | ORDER finding as moot 186 Motion to Appear for Attorney Christopher F. Moriarty to be Admitted Pro Hac Vice. Signed by Judge Alvin W. Thompson on 12/10/2021. (Agati, Kathryn) (Entered: 12/10/2021) |
| 12/10/2021 | 197 | ORDER granting 191 Motion to Appear for Attorneys Jane O'Brien, Jonathan Hurwitz, and Tamar Holoshitz to be Admitted Pro Hac Vice. Signed by Clerk on 12/10/2021. (Agati, Kathryn) (Entered: 12/10/2021) |
| 12/15/2021 | 198 | MOTION to Certify Class by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho.Responses due by 1/5/2022 (Attachments: # 1 Memorandum in Support, # 2 Declaration of William H. Narwold, # 3 Exhibit A − Expert Report of Chad Coffman, CFA, # 4 Exhibit B − Declaration of Winfried Buchbauer, # 5 Exhibit C − Declaration of Donald D. Drum, # 6 Exhibit D − Declaration of Professor Dr. Martin Karollus, # 7 Exhibit E − Motley Rice LLC Firm Resume, # 8 Exhibit F − Labaton Sucharow LLP Firm Resume, # 9 Text of Proposed Order)(Narwold, William) (Entered: 12/15/2021) |
| 12/16/2021 | 199 | CERTIFICATE OF GOOD STANDING re 194 MOTION for Attorney(s) Christopher F. Moriarty to be Admitted Pro Hac Vice by Erste−Sparinvest Kapitalanlagegesellschaft mbH. (Moriarty, Christopher) (Entered: 12/16/2021) |
| 12/16/2021 | 200 | NOTICE of Appearance by Jane B. O'Brien on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (O'Brien, Jane) (Entered: 12/16/2021) |
| 12/16/2021 | 201 | NOTICE of Appearance by Jonathan Hurwitz on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (Hurwitz, Jonathan) (Entered: 12/16/2021) |
| 12/16/2021 | 202 | NOTICE of Appearance by Tamar Holoshitz on behalf of Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha (Holoshitz, Tamar) (Entered: 12/16/2021) |
| 12/22/2021 | 203 | ORDER: The Rule 26(f) Report (ECF No. 181 ) is hereby APPROVED. The court will enter a proposed scheduling order. It is so ordered. Signed by Judge Alvin W. Thompson on 12/22/2021. (Milov−Cordoba, M.) (Entered: 12/22/2021) |
| 12/22/2021 | 204 | PRETRIAL SCHEDULING ORDER. Signed by Judge Alvin W. Thompson on 12/22/2021. (Ghinaglia Socorro, F.) (Entered: 12/22/2021) |
| 01/14/2022 | 205 | MOTION to Compel *the Production of Documents and Interrogatory Responses* by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho.Responses due by 2/4/2022 (Attachments: # 1 Memorandum in Support, # 2 Declaration & Local Civil Rule 37(a) Certification of William S. Norton, # 3 Exhibit 1 − Lead Plaintiffs' RFPs, # 4 Exhibit 2 − Lead Plaintiffs' Interrogatories, # 5 Exhibit 3 − Defendants' Responses & Objections to Lead Plaintiffs' RFPs, # 6 Exhibit 4 − |

| | | |
|---|---|---|
| | | Defendants' Responses & Objections to Lead Plaintiffs' Interrogatories, # 7 Exhibit 5 – SEC FCPA Settlement Document, # 8 Text of Proposed Order)(Narwold, William) (Entered: 01/14/2022) |
| 01/18/2022 | 206 | NOTICE of Appearance by James T. Christie on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho (Christie, James) (Entered: 01/18/2022) |
| 01/27/2022 | 207 | MOTION for Extension of Time until May 9, 2022*to* Oppose to Pl Motion for Class of Certification 198 MOTION to Certify Class by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Jane O'Brien, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Exhibit 17)(Ring, David) (Entered: 01/27/2022) |
| 01/28/2022 | 208 | ORDER: For the reasons set forth in the attached order, the Motion to Intervene by Putative Class Member Alger for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose (ECF No. 164 ) is hereby GRANTED. Signed by Judge Alvin W. Thompson on 01/28/2022. (Ghinaglia Socorro, F.) (Entered: 01/28/2022) |
| 02/03/2022 | 209 | TRANSCRIPT of Proceedings: Type of Hearing: Telephonic Status Conference held on March 26, 2019 before Judge Alvin W. Thompson. Court Reporter: Corinna F. Thompson. **IMPORTANT NOTICE – REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 2/24/2022. Redacted Transcript Deadline set for 3/6/2022. Release of Transcript Restriction set for 5/4/2022. (Thompson, Corinna) (Entered: 02/03/2022) |
| 02/04/2022 | 210 | MOTION for Extension of Time to File Response/Reply as to 198 MOTION to Certify Class until March 22, 2022 by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Gallagher, Robyn) (Entered: 02/04/2022) |
| 02/04/2022 | 211 | Memorandum in Opposition re 205 MOTION to Compel *the Production of Documents and Interrogatory Responses* filed by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Attachments: # 1 Declaration Jane O'Brien, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15)(Ring, David) (Entered: 02/04/2022) |
| 02/08/2022 | 212 | ORDER: Defendants' Motion for an Interim Extension of Time to Oppose Plaintiffs' Motion for Class Certification (ECF No. 210 ) is hereby GRANTED, absent objection. It is so ordered. Signed by Judge Alvin W. Thompson on 2/8/2022. (Milov−Cordoba, M.) (Entered: 02/08/2022) |
| 02/08/2022 | | Set/Reset Deadlines as to 198 MOTION to Certify Class. Responses due by 3/22/2022. (Ferguson, L.) (Entered: 02/09/2022) |
| 02/09/2022 | 213 | MOTION for John J. Esmay to Withdraw as Attorney by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Johnson, James) (Entered: 02/09/2022) |
| 02/10/2022 | 214 | ORDER: The Motion for Withdrawal of Counsel (ECF No. 213 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 2/10/2022. (Milov−Cordoba, M.) (Entered: 02/10/2022) |
| 02/14/2022 | 215 | REPLY to Response to 205 MOTION to Compel *the Production of Documents and Interrogatory Responses* filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Johnson, James) (Entered: 02/14/2022) |

| 02/16/2022 | 216 | MOTION to Intervene *by Putative Class Member for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose* by Charles Schwab.Responses due by 3/9/2022 (Attachments: # 1 Memorandum in Support)(Hoffman, Ari) (Entered: 02/16/2022) |
| --- | --- | --- |
| 02/16/2022 | 217 | NOTICE of Appearance by Ari J. Hoffman on behalf of Charles Schwab (Hoffman, Ari) (Entered: 02/16/2022) |
| 02/16/2022 | 218 | NOTICE of Appearance by David A. Ball on behalf of Charles Schwab (Ball, David) (Entered: 02/16/2022) |
| 02/17/2022 | 219 | Memorandum in Opposition *to Defendants'* re 207 MOTION for Extension of Time until May 9, 2022*to* Oppose to Pl Motion for Class of Certification 198 MOTION to Certify Class filed by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Declaration of Christopher F. Moriarty in Support of Lead Plaintiffs' Opposition to Defendants' Motion for an Extension of Time to Oppose Plaintiffs' Motion for Class Certification, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11)(Narwold, William) (Entered: 02/17/2022) |
| 03/03/2022 | 220 | MOTION for Extension of Time until April 8, 2022 Opposing for Motion for Class Certification 198 MOTION to Certify Class by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Ring, David) (Entered: 03/03/2022) |
| 03/03/2022 | 221 | ORDER: The defendants' Consent Motion for an Extension of Schedule for Further Briefing on Plaintiffs' Motion for Class Certification (ECF No. 220 ) is hereby GRANTED. The defendants shall file their opposition brief by April 8, 2022. The plaintiffs shall file their reply by June 10, 2022. The Defendants' Motion for an Extension of Time to Oppose Plaintiffs' Motion for Class Certification (ECF No. 207 ) is hereby DENIED as moot. It is so ordered. Signed by Judge Alvin W. Thompson on 03/03/2022. (Ghinaglia Socorro, F.) (Entered: 03/03/2022) |
| 03/03/2022 | | Set/Reset Deadlines as to 198 MOTION to Certify Class. Responses due by 4/8/2022. (Ferguson, L.) (Entered: 03/04/2022) |
| 03/09/2022 | 222 | Memorandum in Opposition re 216 MOTION to Intervene *by Putative Class Member for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose* filed by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Ring, David) (Entered: 03/09/2022) |
| 03/15/2022 | 223 | MOTION for Corban S. Rhodes to Withdraw as Attorney by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Johnson, James) (Entered: 03/15/2022) |
| 03/16/2022 | 224 | ORDER: The Motion for Withdrawal of Counsel (ECF No. 223 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 3/16/2022. (Milov–Cordoba, M.) (Entered: 03/16/2022) |
| 03/23/2022 | 225 | REPLY to Response to 216 MOTION to Intervene *by Putative Class Member for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose* filed by Charles Schwab. (Hoffman, Ari) (Entered: 03/23/2022) |
| 03/29/2022 | 226 | Consent MOTION Modify the Scheduling Order by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha.Responses due by 4/19/2022 (Gallagher, Robyn) (Entered: 03/29/2022) |
| 03/31/2022 | 227 | ORDER: The Consent Motion to Modify the Scheduling Order (ECF No. 226 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 3/31/2022. (Milov–Cordoba, M.) (Entered: 03/31/2022) |
| 03/31/2022 | 228 | PRETRIAL SCHEDULING ORDER. Signed by Judge Alvin W. Thompson on 3/31/2022. (Milov–Cordoba, M.) (Entered: 03/31/2022) |
| 03/31/2022 | 229 | ORDER: For the reasons set forth in the attached ruling, Lead Plaintiffs' Motion to Compel the Production of Documents and Interrogatory Responses (ECF No. 205 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 3/31/2022. (Milov–Cordoba, M.) (Entered: 03/31/2022) |

| | | |
|---|---|---|
| 04/05/2022 | 230 | NOTICE of Appearance by Christopher F. Moriarty on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho (Moriarty, Christopher) (Entered: 04/05/2022) |
| 04/05/2022 | 231 | NOTICE of Appearance by Meredith Weatherby on behalf of Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho (Weatherby, Meredith) (Entered: 04/05/2022) |
| 04/05/2022 | 232 | Consent MOTION for Extension of Time to File Response/Reply as to 198 MOTION to Certify Class until April 15, 2022 by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Gallagher, Robyn) (Entered: 04/05/2022) |
| 04/06/2022 | 233 | ORDER: The Consent Motion for an Extension of Schedule for Further Briefing on Plaintiffs' Motion for Class Certification (ECF No. 232 ) is hereby GRANTED. The defendants' opposition to Plaintiffs' Motion for Class Certification is due on 4/15/2022. Any reply shall be filed by 6/17/2022. It is so ordered. Signed by Judge Alvin W. Thompson on 4/6/2022. (Milov−Cordoba, M.) (Entered: 04/06/2022) |
| 04/06/2022 | | Set/Reset Deadlines as to 198 MOTION to Certify Class. Responses due by 4/15/2022. (Ferguson, L.) (Entered: 04/08/2022) |
| 04/15/2022 | 234 | ORDER: For the reasons set forth in the attached order, the Motion to Intervene by Putative Class Member Charles Schwab for the Limited Purpose of Preventing Claim Expiration Under the Statute of Repose (ECF No. 216 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 4/15/2022. (Milov−Cordoba, M.) (Entered: 04/15/2022) |
| 04/15/2022 | 235 | MOTION to Seal Defendants Opposition to Plaintiff Motion for Class Certification and Exhibits 12, 16, 17, 19, 20, 21 and 23 by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Ring, David) (Entered: 04/15/2022) |
| 04/15/2022 | 236 | Sealed Document: Defendants Memorandum of Law in Opposition to Lead Plaintiffs Motion for Class Certification and Appointment of Class Representatives and Co−Class Counsel by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha . (Attachments: # 1 Exhibit 12 (Sealed), # 2 Exhibit 16 (Sealed), # 3 Exhibit 17 (Sealed), # 4 Exhibit 19 (Sealed), # 5 Exhibit 20 (Sealed), # 6 Exhibit 21 (Sealed), # 7 Exhibit 23 (Sealed))(Ring, David) (Entered: 04/15/2022) |
| 04/15/2022 | 237 | Memorandum in Opposition re 198 MOTION to Certify Class Defendants Opposition to Plaintiff Motion for Class Certification and Exhibits 12, 16, 17, 19, 20, 21 and 23 filed by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Attachments: # 1 Affidavit O'Brien, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12 (filed under seal), # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16 (filed under seal), # 18 Exhibit 17 (filed under seal), # 19 Exhibit 18, # 20 Exhibit 19 (filed under seal), # 21 Exhibit 20 (filed under seal), # 22 Exhibit 21 (filed under seal), # 23 Exhibit 22, # 24 Exhibit 23 (filed under seal), # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27)(Ring, David) Modified on 4/18/2022 to correct link to ECF No. 198 instead of 235 (Ferguson, L.). (Entered: 04/15/2022) |
| 04/18/2022 | 238 | ORDER: Defendants' Motion for Leave to File Exhibits Under Seal (ECF No. 235 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 4/18/2022. (Milov−Cordoba, M.) (Entered: 04/18/2022) |
| 04/18/2022 | | Docket Entry Correction re Memorandum in Opposition to Motion (ECF No. 237 ): modified to correct link to MOTION to Certify Class (ECF No. 198 ) instead of Motion to Seal (ECF No. 235 ). (Ferguson, L.) (Entered: 04/18/2022) |
| 05/10/2022 | 239 | Joint MOTION for Protective Order by Alexion Pharmaceuticals Inc.Responses due by 5/31/2022 (Attachments: # 1 Exhibit 1)(Gallagher, Robyn) (Entered: 05/10/2022) |
| 05/11/2022 | 240 | ORDER: The Joint Motion for Entry of Stipulated Protective Order (ECF No. 239 ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 5/11/2022. (Milov−Cordoba, M.) (Entered: 05/11/2022) |
| 05/11/2022 | 241 | PROTECTIVE ORDER. Signed by Judge Alvin W. Thompson on 5/11/2022. (Milov−Cordoba, M.) (Entered: 05/11/2022) |

| | | |
|---|---|---|
| 05/24/2022 | <u>242</u> | MOTION for Leave to File Excess Pages *to Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion for Class Certification* by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Johnson, James) (Entered: 05/24/2022) |
| 06/03/2022 | <u>243</u> | Memorandum in Opposition *to Plaintiff's* re <u>242</u> MOTION for Leave to File Excess Pages *to Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion for Class Certification* filed by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Gallagher, Robyn) (Entered: 06/03/2022) |
| 06/13/2022 | 244 | ORDER: Lead Plaintiffs' Motion for Leave to Extend Page Limitations for Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion for Class Certification (ECF No. <u>242</u> ) is hereby GRANTED, over objection. It is so ordered. Signed by Judge Alvin W. Thompson on 6/13/2022. (Milov−Cordoba, M.) (Entered: 06/13/2022) |
| 06/14/2022 | <u>245</u> | MOTION for Attorney(s) Philip J. Leggio to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number BCTDC−6965432) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # <u>1</u> Affidavit of Philip J. Leggio)(Narwold, William) (Entered: 06/14/2022) |
| 06/15/2022 | 246 | ORDER: Motion to Appear Pro Hac Vice for Attorney Philip J. Leggio (ECF No. <u>245</u> ) is hereby GRANTED. Certificate of Good Standing due by 8/14/2022. Signed by Clerk on 6/15/2022. (Ferguson, L.) (Entered: 06/15/2022) |
| 06/16/2022 | <u>247</u> | CERTIFICATE OF GOOD STANDING re <u>245</u> MOTION for Attorney(s) Philip J. Leggio to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number BCTDC−6965432) by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Leggio, Philip) (Entered: 06/16/2022) |
| 06/17/2022 | <u>248</u> | REPLY to Response to <u>198</u> MOTION to Certify Class filed by Erste−Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # <u>1</u> Declaration of Philip J. Leggio, # <u>2</u> Exhibit A, # <u>3</u> Exhibit B, # <u>4</u> Exhibit C, # <u>5</u> Exhibit D, # <u>6</u> Exhibit E, # <u>7</u> Exhibit F, # <u>8</u> Exhibit G, # <u>9</u> Exhibit H, # <u>10</u> Exhibit I, # <u>11</u> Exhibit J)(Johnson, James) (Entered: 06/17/2022) |
| 07/05/2022 | <u>249</u> | MOTION for Leave to File *Surreply* by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Attachments: # <u>1</u> Exhibit A)(Ring, David) (Entered: 07/05/2022) |
| 07/08/2022 | 250 | ORDER: The Motion for Leave to File Surreply (ECF No. <u>249</u> ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 7/8/2022. (Milov−Cordoba, M.) (Entered: 07/08/2022) |
| 07/15/2022 | <u>251</u> | REPLY to Response to <u>198</u> MOTION to Certify Class filed by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Ring, David) (Entered: 07/15/2022) |
| 08/30/2022 | <u>252</u> | MOTION for Jarett Sena to Withdraw as Attorney by The Alger Funds. (Sena, Jarett) (Entered: 08/30/2022) |
| 08/31/2022 | 253 | ORDER: Attorney Jarett Sena's Motion to Withdraw Appearance (ECF No. <u>252</u> ) is hereby GRANTED. The Clerk shall terminate the appearance of Attorney Jarett Sena. It is so ordered. Signed by Judge Alvin W. Thompson on 08/31/2022. (Ghinaglia Socorro, F.) (Entered: 08/31/2022) |
| 11/30/2022 | <u>254</u> | Consent MOTION Modify Scheduling Order by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha.Responses due by 12/21/2022 (Gallagher, Robyn) (Entered: 11/30/2022) |
| 12/01/2022 | 255 | ORDER: The Consent Motion to Modify the Scheduling Order (ECF No. <u>254</u> ) is hereby GRANTED. It is so ordered. Signed by Judge Alvin W. Thompson on 12/01/2022. (Ghinaglia Socorro, F.) (Entered: 12/01/2022) |
| 12/01/2022 | <u>256</u> | PRETRIAL SCHEDULING ORDER. Signed by Judge Alvin W. Thompson on 12/01/2022. (Ghinaglia Socorro, F.) (Entered: 12/01/2022) |

| | | |
|---|---|---|
| 03/21/2023 | 257 | MOTION for Attorney(s) Jonathan Gardner to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–7280795) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 03/21/2023) |
| 03/22/2023 | 258 | MOTION for Attorney(s) Charles J. Stiene to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–7281171) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit)(Narwold, William) (Entered: 03/22/2023) |
| 03/22/2023 | 259 | ORDER granting 257 Motion to Appear for Attorney Jonathan Gardner to be Admitted Pro Hac Vice Certificate of Good Standing due by 5/21/2023. Signed by Clerk on 3/22/2023. (Barry, L) (Entered: 03/22/2023) |
| 03/22/2023 | 260 | ORDER granting 258 Motion to Appear for Attorney Charles J. Stiene to be Admitted Pro Hac Vice Certificate of Good Standing due by 5/21/2023. Signed by Clerk on 3/22/2023. (Barry, L) (Entered: 03/22/2023) |
| 03/23/2023 | 261 | CERTIFICATE OF GOOD STANDING re 257 MOTION for Attorney(s) Jonathan Gardner to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–7280795) by Charles Schwab, Public Employee Retirement System of Idaho. (Gardner, Jonathan) (Entered: 03/23/2023) |
| 03/23/2023 | 262 | CERTIFICATE OF GOOD STANDING re 258 MOTION for Attorney(s) Charles J. Stiene to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–7281171) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Stiene, Charles) (Entered: 03/23/2023) |
| 03/29/2023 | 263 | MOTION for Attorney(s) Gregory Laufer to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–7290973) by Alexion Pharmaceuticals Inc, Leonard Bell, David L. Hallal, Vikas Sinha. (Attachments: # 1 Affidavit Gregory F. Laufer, # 2 Exhibit Good Standing Certificate G. Laufer)(Gallagher, Robyn) (Entered: 03/29/2023) |
| 03/31/2023 | 264 | ORDER granting 263 Motion to Appear for Attorney Gregory Laufer to be Admitted Pro Hac Vice. Signed by Clerk on 3/31/2023. (Barry, L) (Entered: 03/31/2023) |
| 04/03/2023 | 265 | MOTION for Attorney(s) Adam Miller to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–7297055) by David L. Hallal. (Attachments: # 1 Declaration of Adam Miller, # 2 Exhibit 1 Good Standing Certificate)(Gallagher, Robyn) (Entered: 04/03/2023) |
| 04/04/2023 | 266 | ORDER granting 265 Motion for Attorney Adam Miller to be Admitted Pro Hac Vice. Signed by Clerk on 4/4/2023. (Mendez, D) (Entered: 04/04/2023) |
| 04/13/2023 | 267 | ORDER: For the reasons set forth in the attached document, Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co–Class Counsel (ECF No. 198 ) is hereby GRANTED. Signed by Judge Alvin W. Thompson on 4/13/2023. (Mata, E.) (Entered: 04/13/2023) |
| 04/19/2023 | 268 | MOTION for Attorney(s) James M. Fee to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC–7317537) by Erste–Sparinvest Kapitalanlagegesellschaft mbH, Public Employee Retirement System of Idaho. (Attachments: # 1 Affidavit – James M. Fee)(Narwold, William) (Entered: 04/19/2023) |